[No. F014665. Fifth Dist. Jan. 4, 1993.]

AMERICAN WESTERN BANKER et al., Plaintiffs and Appellants, v. PRICE WATERHOUSE et al., Defendants and Respondents.

**COUNSEL**

Anthony J. Trepel, Frampton, Soley, Hoppe & Boehm, Mary Louise Frampton, Scott W. Williams, Crosby, Heafey, Roach & May, M. Reed Hunter, Paul D. Fogel and Jeffrey Wall for Plaintiffs and Appellants.

McCormick, Barstow, Sheppard, Wayte & Carruth, Oliver W. Wanger, Marshall Whitney, O'Melveny & Myers, Linda J. Smith, Kenneth R. O'Rourke, Frieda A. Taylor, George H. Brown, Lauren M. Yu, McCutchen, Doyle, Brown & Enersen, Leslie G. Landau, Karen L. Kennard and Timothy Benetti for Defendants and Respondents.

**OPINION**

**VARTABEDIAN, J.**—This is an appeal after an order of dismissal for failure to serve the summons within two years after commencement of the action. Appellants, American Western Banker (AWB) and guarantors of some of its corporate debt, sued two certified public accounting firms (collectively respondents) for negligence, fraud and related causes of action. In various ways, all causes of action alleged that respondents should have discovered and notified appellants that certain members of top management of AWB were committing misdeeds, including stealing from the company.

The original complaint named only AWB as plaintiff. An amended complaint added the guarantors as plaintiffs and added a few additional allegations. The summons was served on respondents more than two years after the original complaint was filed, but less than two years after the amended complaint was filed. On motion of respondents filed pursuant to Code of Civil Procedure section 583.420, subdivision (a)(1),[1] the court dismissed the action for failure to serve the summons within two years after commencement of the action.

---

[1]All subsequent code references are to the Code of Civil Procedure.

Appellants claim the lower court abused its discretion because they showed good cause for delayed service based on their financial circumstances and respondents showed no cognizable prejudice from the delay. The guarantor appellants also contend that, as to them, service of respondents was timely, since their portion of the action did not commence until the first amended complaint added them as plaintiffs.

Respondents contend appellants failed to show cognizable good cause for delaying service of the summons and, in particular, that financial inability to proceed was neither established as a matter of fact nor sufficient excuse as a matter of law. In addition, they contend the guarantors cannot claim a later date for commencement of their action since they did not raise that issue in the lower court; and, in any event, filing of the amended complaint related back to the date of filing the original complaint to determine the date upon which the action commenced.

For reasons to be stated, we will affirm as to AWB and reverse as to the guarantors.

PROCEDURAL HISTORY AND CONTENTIONS BELOW

The original complaint was filed on October 14, 1987. AWB sued Price Waterhouse; Deloitte, Haskins & Sells (now Deloitte & Touche) (hereafter Deloitte); and 100 Does for negligence and breach of contract. This complaint was not served, although summons was apparently issued upon it on the date the complaint was filed.

On July 12, 1988, all appellants filed an amended complaint. The summons and amended complaint were served on February 8, 1990.

Each respondent filed an answer to the amended complaint and a motion to dismiss for failure to serve the summons within two years after the action was commenced.

Appellants argued at the motion hearing that they were financially unable to pursue the litigation during the period service was delayed. They contended they were moving with reasonable diligence to repair the damage done by prior managers of the company and were otherwise working diligently to preserve assets during a major recession in the California real estate industry. They were investigating the lawsuit "to protect . . . against abuse of process and malicious prosecution and all of those specters and determine that there was a case that—that could be invested in to proceed." According to appellants, many of the financial problems were exacerbated

by respondents' actions, now the subject of this suit. They contended the record showed good and sufficient cause for the delay in service.

Respondents asserted appellants had the resources to pursue the litigation and simply chose not to do so. Respondents alleged they were prejudiced by the delay. Financial inability, argued respondents, does not provide an excuse for failure to serve the summons.

The court granted the motions to dismiss; no reasons were stated for the ruling.

FACTS

AWB (through a predecessor entity) was initially an agricultural loan broker, dealing with relatively high-risk borrowers who could not obtain loans through the Production Credit Association. AWB borrowed money from banks, then reloaned the money. Later, it entered the field of machinery leasing, and again borrowed money to purchase equipment that was then leased to customers. David W. Mariani (Mariani), the David W. Mariani Investment Partnership (Partnership) and Herbert R. Benham, Jr. (Benham) (collectively, the guarantor appellants) guaranteed many of these corporate obligations. The guarantor appellants were investors in AWB, and Mariani and Benham were members of the board of directors. Other persons handled daily operations of the business.

When loans and leases went bad in 1984 and 1985, allegedly in large part due to corrupt practices by management of AWB, AWB was unable to pay its creditors. Lenders called upon Mariani, Partnership and Benham to pay off the AWB loans.

From 1979 through 1984, Deloitte served as outside auditor for AWB. Deloitte prepared periodic financial reports for the board of directors. Mariani and Benham allegedly relied on these reports in making investment decisions and in agreeing to guarantee AWB debts. Price Waterhouse became the auditor in 1984 and served for fiscal years to and including 1986. Mariani and Benham also allegedly relied on Price Waterhouse financial reports in making loan guarantee decisions.

Mariani and Benham caused new management to be placed in charge of the daily operations of AWB in 1985. AWB was sued by creditors in federal

court in 1985; it cross-claimed against Deloitte. Summary judgment was entered in that case in 1987 in favor of the creditors, and the cross-claim was dismissed.

On October 14, 1987, AWB filed its action against Deloitte and Price Waterhouse. The first cause of action alleged Deloitte breached its duty to AWB by negligently and carelessly failing to conduct an audit of its books and records according to generally accepted accounting principles. The second cause of action alleged Deloitte breached its written contract to perform accounting services "by failing to perform accounting work as contemplated by the parties." The third cause of action alleged negligence of Price Waterhouse in terms similar to the first cause of action, and the fourth cause of action alleged breach of contract in terms similar to the second cause of action. The complaint was not served.

On July 12, 1988, AWB and the guarantor appellants filed an amended complaint. This complaint was served on February 8, 1990. The first through fourth causes of action alleged negligence, breach of contract, fraud and negligent misrepresentation against Deloitte. The fifth through eighth causes of action alleged the same four causes of action against Price Waterhouse. The amended complaint alleged that AWB borrowed over $25 million to conduct its business, and that the guarantor appellants "guaranteed a portion of this debt in direct reliance upon [Deloitte's] accounting work." It alleged that Deloitte knew or should have known this. It alleged Price Waterhouse "actually knew or should have known that its expert and professional opinion was for the direct benefit and guidance of plaintiffs." In virtually all other respects, the amended complaint makes reference to "plaintiffs" without differentiating between AWB and the guarantors.

The amended complaint was dismissed for failure to serve the summons within two years after the action was commenced. AWB and the guarantors filed their notice of appeal on September 26, 1990.

STATUTORY LAW AND STANDARD OF REVIEW

Section 583.410, subdivision (a) provides: "The court may in its discretion dismiss an action for delay in prosecution pursuant to this article on its own motion or on motion of the defendant if to do so appears to the court appropriate under the circumstances of the case." Section 583.420, subdivision (a) provides, in part: "The court may not dismiss an action pursuant to this article for delay in prosecution except after one of the following conditions has occurred: [¶] (1) Service is not made within two years after

the action is commenced against the defendant." Rule 373(e), California Rules of Court, implements section 583.410.[2]

■ "When the trial court has ruled on [a motion to dismiss for failure to prosecute], ' "unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." ' " (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].) The trial court's order is presumed correct and the reviewing court will indulge every inference in favor of the order below. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) "The appellant carries the burden of demonstrating an abuse of discretion. [Citation.] An appellate court may reverse the trial court's decision only if, based on the evidence viewed most favorably in support of the trial court's decision, it finds that no reasonable judge could have reached the same result." (*Kuchins* v. *Hawes* (1990) 226 Cal.App.3d 535, 541 [276 Cal.Rptr. 281].)

DISCUSSION

I.

*Dismissal of Guarantor Appellants' Claims*

■ In their supplemental opening brief, the guarantor appellants argue that, whatever the result of AWB's appeal, the dismissal order should be reversed *as to them* because their action was "commenced" when the amended complaint was filed, adding them as plaintiffs. Since the summons was served on respondents 19 months after the amended complaint was filed, the guarantor appellants argue, discretionary dismissal was not permitted. Respondents contend adding new plaintiffs does not extend the time for

---

[2]California Rules of Court, rule 373(e) provides: "In ruling on the motion the court shall consider all matters relevant to a proper determination of the motion, including the court's file in the case and the affidavits and declarations and supporting data submitted by the parties and, where applicable, the availability of the moving party and other essential parties for service of process; the diligence in seeking to effect service of process; the extent to which the parties engaged in any settlement negotiations or discussions; the diligence of the parties in pursuing discovery or other pretrial proceedings, including any extraordinary relief sought by either party; the nature and complexity of the case; the law applicable to the case, including the pendency of other litigation under a common set of facts or determinative of the legal or factual issues in the case; the nature of any extensions of time or other delay attributable to either party; the condition of the court's calendar and the availability of an earlier trial date if the matter was ready for trial; whether the interests of justice are best served by dismissal or trial of the case; and any other fact or circumstance relevant to a fair determination of the issue. The court shall be guided by the policies set forth in section 583.130 of the Code of Civil Procedure."

serving the summons, and in any event this issue was waived because it was not raised in the trial court.[3]

We will first discuss the substantive issue, then the procedural one. First, for purposes of section 583.420, did the "action" of the guarantor appellants "commence" with the filing of the amended complaint or relate back to the filing of the original complaint by AWB? Second, have the guarantor appellants waived this issue by failing to raise the argument in the court below?

A. *Relation Back*

As previously noted, the original complaint and the amended complaint arose out of the same core facts. The original complaint alleged respondents were hired as outside auditors to produce an audit report in conformity with generally accepted accounting principles. It alleged AWB was damaged by the failure of the auditors to apply those standards in preparing the audit reports, in violation of their duty of care and in breach of their contract.

In addition to those allegations contained in the earlier complaint, the amended complaint alleged that respondents knew or should have known the guarantor appellants would rely on the audit reports in making guarantee decisions and that the guarantor appellants were injured by their reliance on the reports. Further, the amended complaint alleged fraud, in that respondents "uncovered or should have uncovered" management improprieties and "intentionally failed to report these facts to the plaintiffs." Finally, the complaint alleged that respondents "negligently and carelessly failed to report these facts to plaintiffs." As to the fraud and negligent misrepresentation counts, the amended complaint simply alleged that "plaintiffs have been damaged," without any differentiation between AWB and the other appellants.

In *Barrington* v. *A. H. Robins Co.* (1985) 39 Cal.3d 146 [216 Cal.Rptr. 405, 702 P.2d 563], plaintiff sued a doctor, a drug company and Doe defendants based on injury she sustained, allegedly from the use of a drug. More than three years after filing the complaint, plaintiff amended it to substitute Robins as a Doe defendant, additionally alleging that the original

[3]Respondents assert that Partnership and Benham filed no opposition to the motions to dismiss and failed to offer an excuse for failure to serve the summons. In fact, opposition to the motions was filed by counsel on behalf of "plaintiffs" generally. While there was no excuse claimed based on a showing that Benham or the Partnership was in poor financial condition, the discussion in section I does not depend on the guarantor appellants' making a good cause showing.

injury was in fact caused by an intrauterine birth control device manufactured by Robins. On Robins's motion to dismiss for failure to serve the action within three years after it was commenced, the trial court granted the motion.

On appeal, the Supreme Court adopted for use in determining when an action has "commenced" for purposes of the delay-in-prosecution statutes the relation-back rules applicable to statute of limitations issues. If the new cause of action involves new facts or a new injury, it does not relate back to the original complaint. "An amended complaint relates back to the original complaint, and thus avoids the statute of limitations as a bar against named parties substituted for fictitious defendants, if it: (1) rests on the same general set of facts as the original complaint; and (2) refers to the same accident and same injuries as the original complaint." (*Barrington* v. *A. H. Robins Co., supra,* 39 Cal.3d at p. 151.)

Thus, the statute of limitations is not tolled as to the new count by the filing of the original complaint, but also the original complaint does not "commence" the action on the new count for purposes of sections 583.410 and 583.420. The court gave the following justification for adopting the statute of limitations relation-back rule in the failure-to-prosecute context: "The failure to apply the relation-back rule when an amended complaint contains a new cause of action based on different operative facts is likely to lead to an absurd result. Here, the plaintiff could have filed her Dalkon Shield cause of action as a separate lawsuit. Instead, she chose to take advantage of the liberal rules of joinder of causes of action. Had she not elected to join all her causes of action in one pleading in the interests of judicial economy, she would not have faced dismissal under [the previous failure-to-serve statute]." (*Barrington* v. *A. H. Robins Co., supra,* 39 Cal.3d at p. 157.)

In *Barrington* v. *A. H. Robins Co., supra,* 39 Cal.3d 146, the new count alleged new facts and was held not to relate back to the filing of the original complaint. The order dismissing that count against Robins was reversed. (Although Barrington was decided under a predecessor version of the delay-in-prosecution statutes, the court expressly held that the current statute would produce the same result. (*Id.* at pp. 155-156.))

Respondents dispute the applicability of the *Barrington* rules to the instant case. They contend that these rules apply only to amended complaints that add *defendants.* They argue a plaintiff could extend forever the time for service of the summons simply by adding new plaintiffs. This argument fails for two reasons.

First, there is no hint in *Barrington* that the Supreme Court intended to limit the application of rules that determine whether there is a relation back to changes affecting defendants only. For statute-of-limitations purposes the relation-back distinction has been held applicable to amendments involving plaintiffs as well as defendants. (See 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1151, p. 569.)

Two cases cited by Witkin, *op. cit. supra*, are illustrative of the point. In *Pasadena Hospital Assn. Ltd.* v. *Superior Court* (1988) 204 Cal.App.3d 1031 [251 Cal.Rptr. 686], a doctor timely sued a hospital for defamation. After the statute of limitations had run, the doctor added his professional corporation as an additional plaintiff. In holding that the amended complaint related back to the original complaint for statute-of-limitations purposes, the court noted that the operative facts and the alleged injury were the same in the original and amended complaints. Although adding a new entity as a plaintiff, the amended pleading merely corrected a technical defect as to the allocation of the same injury originally alleged.

On the other hand, in *Bartalo* v. *Superior Court* (1975) 51 Cal.App.3d 526 [124 Cal.Rptr. 370], the plaintiff added in the amended complaint was not able to take advantage of the relation-back rule. In that case, a woman timely sued for personal injuries. After the statute of limitations ran, she attempted to add her husband as an additional plaintiff, alleging his loss of consortium. Because a new and different injury was consequently alleged, the husband's amended complaint did not relate back to the original complaint.

Thus, the general rule adopted by the Supreme Court for determining whether an amended complaint extends the time for service of the summons includes added plaintiffs as well as added defendants.

Second, because of the reciprocal nature of the rule, respondents' contention that service can be indefinitely delayed is wholly unfounded. To the extent time for service of the amended complaint begins when the amended complaint is filed, the statute of limitations is tolled only upon filing of the amended complaint, and hence cannot operate to expose defendants to any liability upon which the statute of limitations has already run. That is the basis for the Supreme Court's statement in *Barrington* v. *A. H. Robins Co., supra,* 39 Cal.3d at page 157, that the rule merely permits judicially efficient treatment of causes of action that otherwise could be brought in separate lawsuits. (See also *J. A. Thompson & Sons, Inc.* v. *Superior Court* (1963) 215 Cal.App.2d 719 [30 Cal.Rptr. 471], disapproved on another point in *Cross* v. *Pacific Gas & Elec. Co.* (1964) 60 Cal.2d 690, 694 [36 Cal.Rptr. 321, 388

P.2d 353] [when minor plaintiff was added to wrongful death action, court held relation-back rule did not bar service of summons, in part because minor's cause of action would be independently timely and viable but for certain technical requirements of wrongful death actions generally].)

Respondents contend the statutory language itself is limited to defendants and does not permit consideration of relation-back standards when new plaintiffs are added. Respondents note section 583.420, subdivision (a)(1) says, "Service is not made within two years after the action is commenced *against the defendant*." (Italics added.) By emphasizing the last phrase of the subdivision, respondents contend only addition of new defendants is contemplated.

This is unpersuasive, since the statute must be read as a whole, not in isolated phrases. (*Marrujo* v. *Hunt* (1977) 71 Cal.App.3d 972, 977 [138 Cal.Rptr. 220].) An "action" requires at least two parties, both a plaintiff and a defendant. There was no "action" commenced by the guarantor appellants "against the defendant" until the amended complaint was filed, except as to causes of action that relate back to the filing of the original complaint.[4] Application of the *Barrington* rules to both plaintiffs and defendants provides a coherent framework for determining whether an action was commenced against the defendant by the filing of the original complaint or the amended complaint.

Respondents argue that the appropriate analytical framework instead is provided by cases considering the timeliness of complaints in intervention, since any liability of respondents to the guarantor appellants is derivative and arises only because of AWB's relationship with respondents. Respondents cite *State Compensation Ins. Fund* v. *Selma Trailer & Manufacturing Co.* (1989) 210 Cal.App.3d 740, 755 [258 Cal.Rptr. 545], a workers' compensation case in which this court held that the employee's complaint in intervention against a third-party equipment manufacturer related back to the date of filing the insurer's original complaint against the manufacturer. The court held discretionary dismissal of the employee's complaint in intervention was justified based upon the date of service of the original complaint. In large part, the court relied on the traditional rule that substantively and procedurally employer and employee third party actions are interchangeable, regardless of who first brings the action. (*Id.* at p. 751.)

---

[4]Respondents' contention that Mariani repeatedly cast himself in the trial court as AWB's "alter ego," and should not now be permitted to "walk away from his words," is not well taken. To the extent any of the guarantor appellants may be the "alter ego" of AWB—i.e., assert rights as AWB's subrogee—their claims *are* barred, as discussed in section II, *post*.

While we do not construe the first amended complaint as pleading a subrogation claim, it is not inconceivable that such a theory of recovery might be asserted should this litigation be reinstated in the trial court. A subrogee's entitlement is wholly derivative of its subrogor's rights. (See generally 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, §§ 169-170, pp. 848-851.) *State Compensation Ins. Fund* v. *Selma Trailer & Manufacturing Co., supra,* 210 Cal.App.3d 740, requires that those claims stand or fall with AWB's own causes of action; the commencement date of the action as to those claims would relate back to the filing of the original complaint, meaning the time of service would be outside of two years.

A different result is required as to the claims of the guarantor appellants in their own right, not as subrogees of AWB. It is true that the claims of the guarantor appellants arise from the same general facts as AWB's claims and that the guarantor appellants' claims are derivative in the sense that there would be no such claims but for AWB's relationship with respondents. However, the differences between the claims include the guarantor appellants' allegations of (1) *duty* owed them by respondents, a duty independent of that owed AWB, and (2) the guarantor appellants' own compensable *injury*, being separate and apart from any compensable injury of AWB.[5]

The separate nature of the guarantor appellants' claims was emphasized in the recent case of *Bily* v. *Arthur Young & Co.* (1992) 3 Cal.4th 370 [11 Cal.Rptr.2d 51, 834 P.2d 745]. In that case, the Supreme Court held: "[A]n auditor's liability for general negligence in the conduct of an audit of its client's financial statements is confined to the client, i.e., the person who contracts for or engages the audit services. Other persons may not recover on a pure negligence theory.[16] [¶] There is, however, a further narrow class of persons who, although not clients, may reasonably come to receive and rely on an audit report and whose existence constitutes a risk of audit reporting that may fairly be imposed on the auditor. Such persons are specifically intended beneficiaries of the audit report who are known to the auditor and for whose benefit it renders the audit report. While such persons may not recover on a general negligence theory . . . they may . . . recover on a theory of negligent misrepresentation." (*Id.* at pp. 406-407.) Footnote 16 reads, in relevant part, "In theory, there is an additional class of persons who

---

[5]There is no inconsistency in barring some claims against a defendant and not barring others. In *Barrington* v. *A. H. Robins Co., supra,* 39 Cal.3d at page 146, discussed at length above, the Supreme Court reversed only as to the Dalkon Shield count. A. H. Robins was also named as a defendant in additional counts carried over from the original complaint, which claimed damages from use of Darvon. Because the original complaint was not served on Robins and the other defendants, dismissal was proper as to all such counts. (See *id.* at pp. 149, fn. 1, 157.)

may be the practical and legal equivalent of 'clients.' It is possible the audit engagement contract might expressly identify a particular third party or parties so as to make them express third party beneficiaries of the contract. . . . [W]e have no occasion to decide whether and under what circumstances express third party beneficiaries of audit engagement contracts may recover as 'clients' under our holding." (*Ibid.*)

We are not called upon in the present case to evaluate the viability of guarantor appellants' causes of action under the new *Bily* standard. We do note that *Bily* suggests that the viability of any surviving (nonsubrogation) claims here rests entirely on the nature of the relationship between the guarantor appellants and the accountants, not on the relationship between the guarantor appellants and AWB. Accordingly, cases addressing complaints in intervention do not reflect considerations applicable to the amended complaint in the present case. (Compare *Jensen* v. *Royal Pools* (1975) 48 Cal.App.3d 717 [121 Cal.Rptr. 805] [court discussed the relation-back doctrine when new plaintiffs are added, but *same* facts and injury are involved in original and amended complaint].)

## B. *Waiver*

In the proceedings below, the guarantor appellants failed to assert a distinction between themselves and AWB in the context of establishing the later commencement-of-action date now claimed on appeal.[6] Respondents contend the guarantor appellants should be barred from asserting this new theory on appeal. We conclude application of the waiver doctrine to these circumstances is not justified.

Normally, if there has been a contested evidentiary proceeding in the court below, the appellant is not permitted to raise a new theory of the case on appeal. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 316, pp. 327-329.) "However, when 'the facts with reference to the contention newly made on appeal appear to be undisputed and . . . no different showing could be made on a new trial it is deemed appropriate to entertain the contention as a question of law on the undisputed facts and pass on it accordingly.' " (*Seeley* v. *Seymour* (1987) 190 Cal.App.3d 844, 856 [237 Cal.Rptr. 282].)

Respondents contend that the issue presents a question of fact, rather than one of law. Had they known about this theory while before the

---

[6]While they did not specifically argue the later commencement date, the guarantor appellants did recite in their memorandum of points and authorities facts pleaded which demonstrate some of the previously discussed differences between their claims and those of AWB.

trial court, argue respondents, they would have attempted to show the guarantor appellants are mere "alter egos" of AWB.[7] Permitting the guarantor appellants to argue their separate status now is "manifestly unfair," according to respondents.

There is no unfairness in our determination that these appellants have not waived this theory. The reason is that these appellants' separateness, both in fact and in legal theory, is a direct prerequisite to the claims they will be able to assert on remand. In other words, only to the extent these appellants have an independent relationship with the respondents can they state a cause of action under *Bily* v. *Arthur Young & Co.*, *supra*, 3 Cal.4th 370. Furthermore, only to the extent their actions were timely when the amended complaint was filed will their actions be permitted to proceed if respondents assert a statute-of-limitations defense. Nothing respondents could have shown factually on their motion to dismiss for failure to prosecute would change guarantor appellants' ability to *allege*, as they have alleged, that respondents owed them a direct duty and the guarantors suffered their own injury, separate and apart from the relationship between respondents and AWB.

There can be no factual dispute that the guarantor appellants commenced their "action," insofar as it is maintainable separately from that of AWB, when the first amended complaint was filed on July 12, 1988; respondents were served within two years of this date. Thus, under the present circumstances, the guarantor appellants are not barred from asserting that their portion of the action does not relate back to the date of AWB's filing of the original complaint. We reverse the judgment as to the guarantor appellants.

## II.

### Dismissal of AWB's Claims

In *Putnam* v. *Clague* (1992) 3 Cal.App.4th 542 [5 Cal.Rptr.2d 25] (*Putnam*), this court recently surveyed the case law concerning discretionary dismissals for failure to serve the summons. *Putnam* involved a group of medical malpractice cases concerning the same procedure performed by the same doctor. The actions were all filed by the same attorney. Several of the actions were served on the defendant, and plaintiffs' counsel pursued one of the actions with the idea that evidence on the issue of standard of care developed in that case would be usable in the other cases. After significant discovery was conducted, the lead case settled. Counsel then served the

[7]Respondents' request, filed August 28, 1992, to strike appellants' letter brief and impose sanctions is denied.

summons in each of the three cases ultimately involved in the *Putnam* appeal. Service in each case was made more than two years, but less than three years, after the complaint was filed. On defendant's motion, the court dismissed the actions pursuant to section 583.420, subdivision (a)(1).

The Court of Appeal reversed. ■ After surveying the existing case law, the court summarized the correct analysis under section 583.420, subdivision (a)(1) as follows: "[T]he plaintiff, opposing a motion to dismiss for delay in prosecution, has the initial burden to show excusable delay. Only after he has done so does the court consider other factors such as prejudice. [Citations.] '[T]he policy of disposing of litigation on the merits does not prevail unless the plaintiff makes some showing of excusable delay.' [Citations.] 'When faced with a motion to dismiss it is incumbent upon plaintiff to establish reasonable or excusable delay in service. If such a showing is not made, the court may dismiss the action in its discretion even if defendant fails to establish actual prejudice.'" (*Putnam, supra*, 3 Cal.App.4th at p. 549.)

Here, appellants argue that they showed some reasonable basis for the delay in service, and that respondents' prejudice was of their own making. Respondents counter that appellants did not establish any reasonable cause for the delay and that their own showing of prejudice outweighed any reasonable cause appellants may have established. ■ We apply the substantial evidence test to the instant trial court's implied findings.[8] ■ The court impliedly found that appellants failed to establish a reasonable basis for the delay in service of process. We conclude that the record supports this conclusion.

*Putnam* posed the line of inquiry concerning reasonable cause for delay as follows: "Is the [plaintiff's] explanation [for the delay] credible under all the circumstances? If the facts are disputed and the trial court finds on substantial evidence that the explanation is merely an afterthought or pretext designed to cover up neglect, dismissal may be warranted. If the explanation is credible, however, the court should consider whether the reasons given for the decision are clearly unreasonable. That is, could a reasonably competent attorney conclude that delay was justified under the circumstances?" (*Putnam, supra*, 3 Cal.App.4th at pp. 557-558.)

Substantial evidence supports the trial court's implied finding that the excuse tendered by appellants was not credible. Appellants contended below

---

[8]In a letter brief, appellants suggest that the trial court was required to state reasons or make findings in granting the dismissal motion. This is not so. Ordinary rules of implied findings and substantial evidence apply in appellate review of dismissal motions. (See *Denham v. Superior Court, supra*, 2 Cal.3d at p. 564.)

that they were too poor to actively pursue the litigation during the 28 months between commencement of the action and service of the complaint. While our earlier discussion accorded the guarantor appellants an identity separate from AWB, it is undisputed that the question of ability to finance the litigation focused on an examination of the financial condition of the guarantor Mariani.

In response to appellants' declarations concerning their financial resources, respondents submitted, without objection, excerpts from The Business Journal describing certain assets of Mariani and his family and disclosing assets in excess of $300 million.

While conflicting inferences could be drawn from the news articles and Mariani's own declaration, clearly one reasonable conclusion from the evidence was that Mariani could afford to finance the litigation, even though his liquid assets were strained.[9] A finding by the court that the claim of financial impracticability was not credible, supported as it was by substantial evidence, is sufficient to require affirmance of the order dismissing AWB's action.[10]

The trial court would also have been justified in concluding the financial impracticability excuse itself was unreasonable.[11] As respondents point out,

---

[9]Respondents' motion to add new evidence, filed August 6, 1992, is denied. The proposed evidence consists of admissions by Mariani in other litigation.

[10]The opening brief and reply brief, filed by original counsel for appellants, asserted that financial inability was the cause for delay in service of the summons, such having been the argument made in the trial court. New counsel attempts to set forth additional reasons. We need not open our discussion to reasons for delay not presented earlier. In any event, our reading of these purported excuses indicates that they are simply aspects of the "financial problem" rationale and/or they do not speak credibly to the issue of delay.

[11]The current circumstances call for a somewhat different analysis of reasonableness than that set forth in *Putnam. Putnam* says a decision to defer service of the summons is reasonable if "a reasonably competent attorney [could] conclude that delay was justified under the circumstances." (*Putnam, supra*, 3 Cal.App.4th at p. 558.) This standard, however, implies that an affirmative *decision* to delay service was made by the plaintiff. In the present case, the record does not reflect any claim that an affirmative decision was made to delay service. Rather, appellants claim the reason service was not made for 28 months was that they could not afford to hire attorneys who would actively litigate the case and could not afford the discovery "onslaught" that would come when respondents found out about the lawsuit. The timing of the decision to go forward is claimed to be based on the course of settlement of suits by AWB's creditors and consequent resolution of some of the financial difficulties. It is only coincidental, as far as the record shows, that the financial difficulties happened to be resolved more than two years but less than three years after the original complaint was filed.

*Putnam*'s criterion for reasonableness is limited to instances when there has been a *decision* to delay service. Other cases, such as the present case, may present circumstances in which

no reported case has held that inability to finance prosecution of a lawsuit is good cause to delay service of the complaint. The only case appellants even cite in this regard, *Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714 [170 Cal.Rptr. 790, 621 P.2d 829], provides no support for their position.

*Hocharian* v. *Superior Court, supra*, 28 Cal.3d 714, involved an action dismissed for failure to serve the summons within three years, i.e., the mandatory dismissal rule of then section 581a (now § 583.210, subd. (a)). In dicta, the Supreme Court stated: "Exceptions to the literal language of time-limit statutes were developed in recognition not only of 'objective impossibility in the true sense, but also impracticability due to excessive and unreasonable difficulty or expense.' (*Christin* v. *Superior Court* [(1937) 9 Cal.2d 526, 533 (71 P.2d 205, 112 A.L.R. 1153)].) As every litigator knows, the prosecution or defense of a lawsuit involves the difficult problem of balancing the effectiveness of any given tactic or procedure against its cost in terms of time and expense." (*Hocharian* v. *Superior Court, supra*, 28 Cal.3d at p. 720.) The *Hocharian* court remanded the action to the trial court for a hearing on the issue whether plaintiff had exercised due diligence in her conduct of discovery, which discovery had failed to identify a new defendant within three years after suit was filed.[12]

*Christin* v. *Superior Court* (1937) 9 Cal.2d 526, 532-533 [71 P.2d 205, 112 A.L.R. 1153], cited in *Hocharian* v. *Superior Court, supra*, 28 Cal.3d 714, involved dismissal of an action for failure to bring it to trial within five years after the action was commenced. The question was whether the five years continued to run during an appeal of a change-of-venue order. The court held that bringing the matter to trial during that time would be impracticable

---

some event results in *inadvertent* delay in service for more than two years. California Rules of Court, rule 373(e) contemplates several such situations, and *Putnam* in no way restricts the courts' consideration of these nondeliberate delays in service. But both *Putnam* and California Rules of Court, rule 373(e) require a rational relationship between the asserted reason for delay and the fact of delay *of service of the summons*, not some generalized delay in the action as a whole.

Thus, in the present case, Deloitte's refusal to turn over documents voluntarily at a time when it did not know about the suit might well have caused a reasonable attorney to defer *filing the suit* to investigate the facts. But, once the action has been filed on incomplete facts, the only relationship Deloitte's refusal could have to *service of process* is that a reasonable attorney *would cause service* to facilitate the release of the documents through discovery.

[12]According to *Barrington* v. *A. H. Robins Co., supra*, 39 Cal.3d at page 156 and footnote 5, *Hocharian* v. *Superior Court, supra*, 28 Cal.3d 714 was repudiated almost immediately by amendment of section 581a to add subdivision (f), which provided, "Except as provided in this [statute], the provisions of this section are mandatory and are not excusable, and the times within which acts are to be done are jurisdictional."

because the litigants would be "charged with [the] unnecessary expense" of witness, jury and attorney fees for a trial that could be nullified by the appeal. (*Id.* at p. 532.)

In the present case, appellants claim the right to avoid notifying respondents of the lawsuit because appellants were unable to afford their attorney fees and a projected onslaught of discovery from respondents once they learned about the action. Nothing in *Hocharian* or *Christin* supports a conclusion that a litigant may unilaterally put the case in abeyance to meet its own financial needs.

Finally, appellants do not claim they could not afford service of the summons per se, nor do they claim they were unrepresented by counsel during the 28-month delay in service. Discovery statutes make ample provision for protective orders if requested discovery is financially burdensome to the responding party. (See, e.g., §§ 2017, subd. (c), 2031, subd. (e).)

Accordingly, we hold as a matter of law that financial inability to conduct discovery or otherwise prosecute the lawsuit does not constitute a reasonable excuse for failure to simply serve the summons. (See also *Rice* v. *Arden Farms Co.* (1962) 199 Cal.App.2d 349, 357-358 [18 Cal.Rptr. 863]; *Bryson* v. *Harryman* (1931) 118 Cal.App. 588, 591-592 [5 P.2d 665]["Lack of funds on the part of the plaintiff has been held not to be conclusive as an excuse for delay in serving the summons, especially where the amount required would be trivial"].)

Thus, appellants have failed to demonstrate the trial court abused its discretion as to either of the two elements identified by *Putnam*, credibility and reasonableness of the tendered excuse for failure to serve the complaint. Consequently, our analysis of the dismissal order need not reach the step of balancing respondents' prejudice with appellants' excuse for delay. (See *Denham* v. *Superior Court, supra,* 2 Cal.3d at p. 564.)

### DISPOSITION

The judgment of dismissal is affirmed as to appellant AWB; the judgment is reversed as to appellants Mariani, Partnership, and Benham. Costs on appeal are awarded to respondents because (1) they prevail against AWB, and (2) even though they do not prevail against the remaining appellants,

those appellants could have favorably resolved the relation-back issue had it been specifically raised in the court below.

Stone (W. A.), Acting P. J., and Ardaiz, J., concurred.

A petition for a rehearing was denied February 1, 1993.