108 Cal.Rptr.2d 748 (2001)
90 Cal.App.4th 247
Ronald G. LUND, Plaintiff and Respondent,
v.
SAN JOAQUIN VALLEY RAILROAD, Defendant and Appellant.
No. F034334.
Court of Appeal, Fifth District.
June 28, 2001.
Review Granted September 26, 2001.
*749 Dowling, Aaron & Keeler, William T. McLaughlin II, Timothy R. Sullivan, Fresno; Lane Powell, Spears Lubersky and Michael B. King for Defendant and Appellant.
*750 Crosby, Heafey, Roach & May, Los Angeles, Joseph P. Mascovich, Oakland; Brasher Law Firm and William A. Brasher, for The Burlington Northern and Santa Fe Railway Company and Union Pacific Railroad Company as Amici Curiae, on behalf of Defendant and Appellant.
Miller & Reivitis, Kimberly A. Miller, Michael E. Reivitis; and Charlotte E. Costan, Los Angeles, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

OPINION
VARTABEDIAN, J.
This is an appeal by defendant San Joaquin Valley Railroad (appellant) from a judgment against it in a worker's suit for personal injury under the Federal Employers' Liability Act, 45 United States Code section 51 et seq. (FELA). In the unpublished portion of this opinion, we discuss appellant's contentions that plaintiff Ronald G. Lund (respondent) obtained judgment in his favor under "a theory [that] is contrary to federal substantive law," that no evidence demonstrates respondent's injury was foreseeable, and that the jury was misinstructed. In the published portion, we discuss appellant's claim the judgment impermissibly awards prejudgment interest. We affirm the judgment.

Facts and Procedural History
Appellant owns a series of switching lines in central California. These connector lines permit packing houses and other producers to move their goods to main lines for shipment by the major railroads. The connector lines generally are class 1 or class 2 track, which means speed is restricted on the track and the quality and maintenance of the track and rail bed is somewhat reduced.
In early 1997, appellant brought in a "tie gang" from Fresno to replace deteriorated ties on a switching line between Exeter and Lindsay in Tulare County. The tie gang, supplemented by employees from appellant's local track crews (including respondent), used several track-mounted machines to replace the worn ties and resecure the rails to the ties.
On this particular occasion, the respiking portion of the tie replacement program did not go smoothly. Because the spiking machine was supplied with a larger size of spike (5/8 inch) than was appropriate for the tie plates used on this track (9/16-inch spikes were appropriate), the spiking machine bent many of the spikes and left many others only partially driven through the plates and into the ties.
Respondent's regular assignment with appellant was as a laborer on a "track gang." The track gang, headquartered at appellant's Exeter rail yard, was composed of two or three men and a foreman.
After the tie gang finished its work on the Exeter-Lindsay line, respondent's track gang was assigned to fix the spiking problem. Primarily, they were to remove bent and "high" spikes and replace them with the correct size spikes. Occasionally, the crew could not pull a high spike because it was too tightly lodged in the tie plate. When this happened, the crew attempted to drive the spike through the plate manually, using a spike maul. A spike maul is a specialized sledgehammer with an elongated head so the handle can clear the rail. It and the claw bar are two common tools of a track gang.
On April 1, 1997, the track gang was working on the Exeter-Lindsay line. Respondent came upon a spike he could not remove and attempted to drive it through the tie plate. In swinging the maul, respondent tore a tendon connecting the biceps *751 to the shoulder and tore a tendon in the shoulder rotator cuff.
The torn tendons required surgical repair. After the repairs, respondent was unable to return to his job as a railroad laborer.
Respondent sued appellant under the FELA on December 10, 1997. In February of 1999, he made a settlement offer to appellant, which it did not accept. (See Code Civ. Proc, § 998.) On August 4, 1999, the jury returned a special verdict in favor of respondent, awarding him damages in the amount of $538,570. The court entered judgment on the verdict the same day. On respondent's motion after judgment, the court awarded respondent prejudgment interest pursuant to Code of Civil Procedure section 998 and Civil Code section 3291. Appellant filed a timely appeal from the August 4, 1999, judgment.

Discussion

A. Statutory Background.
Section 1 of FELA (45 U.S.C. § 51) provides in part that "Every common carrier by railroad while engaging in commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."
"The section does not define negligence, leaving that question to be determined ... `by the common law principles as established and applied in the federal courts.' ... What constitutes negligence for the statute's purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formulating and applying the concept governs." (Urie v. Thompson (1949) 337 U.S. 163, 174, 69 S.Ct. 1018, 93 L.Ed. 1282.)
The parties agree that FELA is applicable to respondent's claims for compensation and that appellant had a "`duty to use reasonable care in furnishing its employees with a safe place to work.'" (Consolidated Rail Corp. v. Gottshall (1994) 512 U.S. 532, 550, 114 S.Ct. 2396, 129 L.Ed.2d 427.) "Under [FELA] the duty which rests upon defendant is to use reasonable care in furnishing its employees with a safe place to work and safe tools and appliances. The term negligence, as used in the act, is a violation of that duty. The employer is liable for injuries which can be attributed to conditions under its control when they are not such as a reasonable man ought to maintain in the circumstances." (Carpenter v. Atchison, T. & S.F. Ry. Co. (1952) 109 Cal.App.2d 18, 22-23, 240 P.2d 5.)
Generally speaking, California law provides for an augmented award of court costs to a prevailing plaintiff where the defendant had earlier rejected a plaintiffs lower settlement offer meeting particular formalities. (Code Civ. Proc, § 998.) In personal injury cases, statutory provisions allow recovery of prejudgment interest as well. (Civ.Code, § 3291.)

B.-C.[**]

D. Prejudgment Interest.
The trial court awarded respondent $22,280.57 as prejudgment interest because he recovered judgment against appellant *752 in an amount exceeding his Code of Civil Procedure section 998 offer to appellant. (See Civ.Code, § 3291.) Although it did not contest the award of prejudgment interest on this ground in the trial court, appellant now contends such an award is unauthorized under FELA. Respondent contends appellant failed to appeal from the order granting prejudgment interest and that it failed to raise the FELA Objection in the court below.
We find appellant's notice of appeal from the judgment was effective to preserve a challenge to the award of prejudgment interest. (Grant v. List & Lathrop (1992) 2 Cal.App.4th 993, 996-997, 3 Cal. Rptr.2d 654; see also Bodell Construction Co. v. Trustees of Cal. State University (1998) 62 Cal.App.4th 1508, 1525, fn. 14, 73 Cal.Rptr.2d 450.) We also determine appellant may raise, for the first time on appeal, the contention that an award of prejudgment interest under Civil Code section 3291 constitutes an unauthorized award of damages in a FELA action. Because the issue is solely one of law, we grant an appellant more latitude in raising the new issue. (American Western Banker v. Price Waterhouse (1993) 12 Cal. App.4th 39, 52, 14 Cal.Rptr.2d 916.)
Nevertheless, appellant has not established that the award of prejudgment interest in this case constitutes an award of additional damages within the prohibition of Monessen Southwestern R. Co. v. Morgan (1988) 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349. In Monessen, the court considered an award of prejudgment interest in an FELA case brought in the state courts of Pennsylvania. Pennsylvania law provided that in every case a plaintiff was to receive prejudgment interest on any monetary award as additional damages for the party's delay in receiving compensation. (Id. at p. 333, 108 S.Ct. 1837.) Only where the defendant made a pretrial settlement offer and the plaintiffs recovery did not exceed 125 percent of that offer was prejudgment interest curtailed, and then only from the date the offer was made. (Ibid.)
The Supreme Court noted that neither FELA nor the general federal interest statute expressly provides for prejudgment interest. (Monessen Southwestern R. Co. v. Morgan, supra, 486 U.S. at p. 336.) The court held that Congress's failure to amend FELA to provide for such additional damages, although it had made such provision in certain other federal causes of action, indicated that Congress did not intend that prejudgment interest would be included as part of a FELA damages award. (Id. at pp. 338-339, 108 S.Ct. 1837.) The court was unwilling, as a matter of judicial prerogative, "to alter the longstanding apportionment between carrier and worker of the costs of railroading injuries." (Id. at p. 339, 108 S.Ct. 1837.)
By contrast with the generally applicable addition of prejudgment interest on damages awards at issue in Monessen, the California statutory provision for prejudgment interest in exceptional circumstances does not alter the apportionment between a railroad and its employee of the costs of an injury. Instead, the California system seeks to, and does, alter the traditional allocation of costs of litigation when a party unreasonably has refused to settle a personal injury case on proffered terms. Prejudgment interest is awarded as part of the post-judgment costs process. "[I]n enacting section 3291, the Legislature's intent was to encourage settlements and to compensate plaintiffs for the loss of settlement funds from the rejection of reasonable settlement offers, but not to compensate them for the loss of use of calculable sums of money owed to plaintiffs." (Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc. (1997) 60 Cal.App.4th 13, *753 21, 70 Cal.Rptr.2d 41; but see Lakin v. Watkins Associated Industries (1993) 6 Gal.4th 644, 663-664, 25 Cal.Rptr.2d 109, 863 P.2d 179 [in addition to encouraging settlement of litigation, an additional purpose of Civ.Code, § 3291 interest is the compensation of "personal injury plaintiffs for loss of use of money during the prejudgment period"].)
Accordingly, although the measure of damagesthat is, compensation for the personal injury negligently inflicted by a railroad on its employeeclearly is a matter of federal law, nevertheless the policies reflected in Code of Civil Procedure section 998 and Civil Code section 3291 reflect the strong state interest in controlling the conduct of litigation in the state's courts. Just like monetary discovery sanctions, prevailing party costs, and other incidental costs of litigation, prejudgment interest, when awarded, can have the effect of making litigation more or less costly in one instance than in another. Such cost to the litigants does not, however, reflect a reallocation of the burden of compensation for the injury to the railroad employee.

Disposition
The judgment is affirmed. Respondent is awarded his costs on appeal.
ARDAIZ, P.J., and GOMES, J.[***] concur.
NOTES
[*] Pursuant to California Rule of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts B and C.
[**] See footnote *, ante.
[***] Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.