[No. B067605. Second Dist., Div. One. Apr. 6, 1993.]

HOLLY ROACH, Plaintiff and Appellant, v.
DONALD VAUGHN LEWIS, JR., et al., Defendants and Respondents.

1180

**COUNSEL**

Glenn W. Hoiby and Ronald P. Kaplan for Plaintiff and Appellant.

Tharpe & Howell, Eric B. Lee and Sean D. Cowdrey for Defendants and Respondents.

**OPINION**

**MASTERSON, J.**—Plaintiff Holly Roach appeals from the order dismissing her action against defendants Donald Vaughn Lewis, Jr., Donald V. Lewis, Sr., and Ann H. Lewis for failure to prosecute. (Code Civ. Proc., § 583.420, subd. (a).) We affirm.

### BACKGROUND

On July 13, 1988, with four days remaining under the applicable statute of limitations, Roach filed a complaint alleging that, as a result of having been struck by a vehicle driven by Donald Vaughn Lewis, Jr., on July 17, 1987, she sustained personal injuries. Although Lewis's insurance carrier was notified within a short time after the incident, the summons was not served on the Lewises until early July of 1991, almost three years after the complaint was filed.

On November 25, 1991, the trial court notified Roach of its intention to dismiss the action, on its own motion, for lack of prosecution. Opposition to the motion was not filed by Roach until the day of the hearing, January 30, 1992. An at-issue memorandum was filed by Roach on the same date. Among other things, Roach's opposition stated that an answer had been filed in the action on July 30, 1991, that a set of interrogatories had been served and responded to, that Roach's deposition was set for February 1992, and that "other discovery [was] underway."

The trial court continued the hearing from January 30, 1992, to March 4, 1992, with permission given to Roach to file declarations regarding service

and efforts made to serve appropriate parties. The only declaration filed pursuant to that permission was that of Roach's trial counsel. He stated that the delay in service of the summons and complaint was deliberate. As he explained, Roach's husband, who had also been injured in the accident, had settled his claim against the Lewises; Roach had settled her property damage claim; and Roach was concerned about settling too soon, since she feared further physical complications from the incident. Roach's trial counsel then detailed the contacts which he had had with the Lewises' insurance carrier, commencing in the early part of 1988 and continuing on a sporadic basis through May of 1990. In those contacts, medical reports on Roach's condition were furnished to the carrier. The declaration further stated that one or more psychologists had been treating Roach for stress, anxiety, and depression, which presumably resulted from the incident. Roach's trial counsel summed up his reasons for delay in service as follows:

"Now and at all times herein I believed I was acting in the best interests of my client, and in accordance with her wishes and intent, and to reduce the additional stress and pressure of litigation and formal discovery that she otherwise would have suffered during the early period of her treatment and hoped for recovery. At no time did [the Lewises' insurance carrier] voice any complaint as to the manner in which the case was being handled or progressing, nor did I anticipate that the court might disapprove of the parties' handling of the case."

On March 4, 1992, in an unreported hearing, the trial court dismissed the action for failure to prosecute. A formal order of dismissal was entered on March 18, 1992. Roach sought reconsideration, which was heard by the court on April 3, 1992. The court rejected the motion for reconsideration, finding that it was neither credible nor reasonable not to serve the summons until just a few days short of the three-year period following the filing of an action.

### STANDARD OF REVIEW

█ "It has been aptly remarked that [Code of Civil Procedure] section 583.420 and the other dismissal-for-delay statutes serve a dual purpose: '[O]ne is effectually the same as that of statutes of limitations—they are both statutes of repose, seeking to discourage stale claims "to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." [Citations.] Secondly, the dismissal section is designed to compel reasonable diligence in the prosecution of actions, thereby expediting the administration of justice. [Citations.]' [Citations.] Balanced against

these considerations is, of course, the strong public policy which seeks to dispose of litigation on the merits rather than on procedural grounds. [Citations.] Although that policy is generally viewed as more compelling than the one seeking to promote prompt prosecution [citations], it will not prevail unless the plaintiff meets his burden of establishing excusable delay. [Citation.]" (*Schumpert* v. *Tishman Co.* (1988) 198 Cal.App.3d 598, 602-603 [243 Cal.Rptr. 810].)

■ "When the trial court has ruled on such a motion, ' "unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." ' [Citations.] ' "The burden is on the party complaining to establish an abuse of discretion. . . ." ' [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].)

## DISCUSSION

In claiming that the court below abused its discretion, Roach places primary reliance on a Fifth District case, *Putnam* v. *Clague* (1992) 3 Cal.App.4th 542 [5 Cal.Rptr. 25]. In that case, three separate medical malpractice complaints were filed against the defendant. The plaintiffs' attorney was handling numerous other pending cases against the defendant for malpractice. The Court of Appeal noted that there were at least nine such actions, and possibly twelve. (*Id.* at p. 546, fn. 2.)

The plaintiffs' attorney in *Putnam* decided to prosecute one of these actions as a "lead case." Evidence obtained through discovery in the lead case could then be used in other cases, including the three cases of the plaintiffs whose actions were later dismissed. Extensive discovery was taken, including six expert witness depositions. Further, it appeared that there had been numerous trial date continuances, some of which had been requested by the defendant. Under the circumstances, the Court of Appeal held that the trial court had in fact abused its discretion when it granted dismissal.

Apart from its importance to the parties thereto, *Putnam* is significant since it was an attempt by the Fifth District to bring some order to what that court thought was an uncertain area. The *Putnam* court proposed the following test:

"When the plaintiff offers some explanation or excuse reflecting a conscious decision not to serve or otherwise prosecute the action, we believe there are two essential questions the court must initially address. Is the

explanation credible under all the circumstances? If the facts are disputed and the trial court finds on substantial evidence that the explanation is merely an afterthought or pretext designed to cover up neglect, dismissal may be warranted. If the explanation is credible, however, the court should consider whether the reasons given for the decision are clearly unreasonable. That is, could a reasonably competent attorney conclude that delay was justified under the circumstances?" (3 Cal.App.4th at pp. 557-558.)

On its facts, *Putnam* is a sound decision. The reasons set forth by the plaintiffs therein were sufficient to justify their inaction. By way of example, the existence of the other malpractice litigation against the defendant, that the defendant himself had requested extensions, et cetera, all fit well within the criteria set forth in California Rules of Court, rule 373(e). Given this, we question why the court in *Putnam* found it necessary to formulate an all-purpose test designed to reach cases not before it.

■ Further, we have doubts about the test itself. Using the first "prong" of the test, the trial judge is supposed to determine whether the explanation is "credible under all the circumstances." (3 Cal.App.4th at p. 557.) This should not be part of a test at all. Attorneys are required to be truthful at all times, and the cause that an attorney espouses should not be advanced simply because the trial judge finds that the attorney is not lying. The second "prong" is equally inappropriate. If the explanation is found "credible," the trial court is supposed to then "consider whether the reasons given for the decision are clearly unreasonable. That is, could a reasonably competent attorney conclude that delay was justified under the circumstances?" (*Id.* at p. 558.) Presumably, if the trial court determines that a reasonably competent attorney would so conclude, that is the end of the inquiry, and dismissal must be denied. Such total deference to counsel's strategy is unwise, particularly when the result is to deprive trial courts of the ability to run their own calendars. California Rules of Court, rule 373(e), sets forth in detail the relevant matters to be considered by the court in ruling on dismissal motions. Attorneys' strategy calls are not set forth as a relevant matter. For these reasons, we decline to adopt *Putnam* as a "test" to be applied in cases of this type.[1]

If we are to maintain our traditional role as a reviewing court, we should not substitute our discretion for that of the trial judges who are daily on the firing line. The Supreme Court has so instructed us in *Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 479 [243 Cal.Rptr. 902, 749 P.2d 339]:

---

[1]Roach has called our attention to the Fourth District's apparent adoption of the *Putnam* test in *Yao* v. *Anaheim Eye Medical Group, Inc.* (1992) 10 Cal.App.4th 1024 [12 Cal.Rptr.2d 856]. We decline to follow that court's lead.

"The trial court, with declarations and supporting affidavits, was able to assess credibility and resolve any conflicts in the evidence. Its findings relating to lack of notice are entitled to great weight. Even though contrary findings could have been made, an appellate court should defer to the factual determinations made by the trial court when the evidence is in conflict. This is true whether the trial court's ruling is based on oral testimony or declarations. [Citation.]" (Italics and fn. omitted.)

■ Turning to the case before us, the trial judge found that the conduct in question was neither "credible [n]or reasonable." As indicated above, Roach's proffered excuses for the delay in service were that her husband's case and certain aspects of her case had settled, she was afraid of a premature settlement since further physical complications from the accident might have developed, and she sought to avoid the stress of discovery. In light of the showing made by Roach, the trial court properly rejected Roach's excuses.[2]

Relying on comments made by the trial court at the hearing on the motion for reconsideration, Roach next asserts that even if we uphold the trial court's rejection of her excuses for the delay in service, the record reveals an abuse of discretion due to the following reasons: "(1) the court's overzealous [sic] desire to clear its docket; (2) the court's erroneous application of the 60-day 'fast-track' service rule to this non-fast-track case; and (3) the court's erroneous belief that a failure to serve summons and complaint within three years can never be deemed reasonable." We need not discuss this assertion at length. It is sufficient to note that the text of the reporter's transcript clearly refutes Roach's argument.

We conclude that the trial court was well within its discretion in dismissing Roach's action.

### DISPOSITION

The order of dismissal is affirmed. Respondents shall recover their costs on appeal.

Spencer, P. J., and Ortega, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 24, 1993. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

[2]Obviously, given the trial court's conclusion that Roach's proffered excuses were neither credible nor reasonable, an assessment in which we concur, Roach would find little solace even under the *Putnam* test.