[No. B074086. Second Dist., Div. Seven. Mar. 9, 1994.]

MONICA WILLIAMS, a Minor, etc., Plaintiff and Appellant, v. LOS ANGELES UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

86

**COUNSEL**

Abbas Hadjian and Peter R. diDonato for Plaintiff and Appellant.

Kohrs & Fiske, Quan, Cohen, Kurahashi, Hsieh & Scholtz and Kenneth Scholtz for Defendant and Respondent.

**OPINION**

**WOODS (Fred), J.—**

I.

PROCEDURAL BACKGROUND

This is an appeal from the judgment of the Los Angeles County Superior Court in which plaintiff's action was dismissed on grounds that the summons and complaint were not served within two years after commencement of the action and relief from that failure was not granted under Code of Civil Procedure section[1] 473.

On or about January 31, 1990, plaintiff and appellant Monica Williams (Williams) by and through her guardian ad litem, Sandra Williams, filed an unverified complaint for damages against defendant and respondent Los Angeles Unified School District (District) in the Municipal Court for the Los Angeles Judicial District. No summons was issued at the time the complaint was filed.

The complaint alleged that Williams had been injured while attending school and that she had timely filed a claim for damages which had been rejected. The complaint prayed for general damages of $24,500 and for

[1]Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

special damages according to proof, but waived all recovery in excess of the jurisdiction of the municipal court.

On August 6, 1990, the law office of Abbas Hadjian was associated as cocounsel for plaintiff.

On October 1, 1991, 20 months after the complaint was filed, an order appointing Sandra Williams as guardian ad litem of plaintiff was filed in the municipal court. On the same date, a summons was issued by the municipal court.

On February 20, 1992, approximately 25 months after the complaint was filed, Williams filed an unverified first amended complaint which prayed for damages within the jurisdiction of the superior court according to proof and did not remit the excess.

On March 16, Williams filed a notice of motion and a motion for an order transferring the case to superior court, which was set for hearing on May 20, in division seven of the municipal court. The motion was not served on the District, which had not appeared in the case. On May 20, the municipal court granted the unopposed motion and ordered Williams to pay transfer fees within 10 days.

Williams mailed the transfer fees to the municipal court by letter dated June 4, 1992. The court recorded payment of the transfer fees on June 15. On June 22, the first amended complaint was filed in the superior court.

On July 17, Sandra Williams was appointed guardian ad litem of Williams by the superior court.

On August 14, a proof of service of the summons on first amended complaint was filed showing service on the District took place on August 6, 30 months after the filing of the original complaint.

On October 9, the District filed a motion to dismiss the complaint for failure to exercise reasonable diligence in prosecuting the case; the motion was noticed for hearing on November 30.

On October 15, the District filed an answer to the first amended complaint.

On October 16, Williams filed an at-issue memorandum.

On October 28, Williams filed written declarations and points and authorities in opposition to dismiss. On November 3, Williams filed a further supplemental opposition to motion to dismiss complaint.

On November 23, the District filed points and authorities in reply to the opposition to dismiss.

On November 30, the superior court granted the District's motion to dismiss on the grounds that the summons and complaint was not served within two years after filing.

On December 10, Williams filed a notice of motion and motion for relief from order pursuant to section 473. The motion was noticed for hearing on January 5, 1993.

On December 28, 1992, the District filed points and authorities in opposition to the motion for reconsideration. The points and authorities filed by the District are included in the clerk's transcript, but the motion for reconsideration filed by Williams is not part of the record on appeal.

On January 5, 1993, the court entered its order denying the motion for relief. The court entered its judgment of dismissal on the same date.

Williams filed a timely notice of appeal.

## II.

### FACTUAL BACKGROUND

Williams, an eight-year-old minor, was allegedly injured at school on September 15, 1989, when she stepped on a piece of broken glass.

On June 13, 1990, Carl Warren & Co., the claims administrator for the District, requested Williams's attorney to provide the District with a courtesy copy of the summons and complaint if they intended to pursue the action.

On September 21, 1990, an investigator at the law office of Abbas Hadjian mailed to Carl Warren & Co. a copy of the association of attorney and promised to supply medical records upon completion of treatment.

On October 11, 1990, Carl Warren & Co. responded to the Hadjian office, stating that it did not have any medical records at that time and could not entertain any settlement discussions. The letter also repeated the request for a courtesy copy of the summons and complaint.

On April 11, 1991, Attorney Abbas Hadjian sent to Carl Warren & Co. a settlement demand of $5,000 supported by documents described as "Medical Specials: $842.00," "Proof of Filing Suit" and "Photo of claiments [sic]

shoe." The documents referenced in the April 11, 1991, letter are not part of the record on appeal.

On or about October 4, 1991, Carl Wong, D.P.M., wrote a report to Hadjian concerning his examination of Williams which took place on May 22, 1991. Dr. Wong reported that Williams stated she had stepped on some glass while at school and suffered a deep laceration on her right foot. Dr. Wong observed a scar and other symptoms from which he concluded that Williams had suffered a separation of a tendon to the third toe of the right foot which would ultimately require surgical correction of a hammertoe condition. The report did not indicate that Williams had developed a hammertoe at the time of examination, but stated that such a condition would inevitably occur. Dr. Wong recommended that Williams be fitted with an orthotic device to correct her gait. Dr. Wong billed $770 for his services.

On November 25, 1991, Dr. Wong rendered a supplemental report in which he estimated the cost of the surgical correction of a hammertoe condition and billed Williams's attorney $300 for the additional report.

On December 2, 1991, Ron Magnuson, a "negotiation specialist" in the office of Hadjian, forwarded the two reports from Dr. Wong to Carl Warren & Co. and made a settlement demand of $125,000.

Magnuson stated in his declarations that he spoke with Mark Fry of Carl Warren & Co. on April 18, 1991, at the time when the settlement demand was $5,000. In that conversation, Fry offered to settle for $232 based upon information that Williams had stepped on the glass in an area that was cordoned off for safety, which she had entered in violation of instructions given to her.

Magnuson reported a further conversation with Fry on December 10, 1991, in which Fry allegedly stated that settlement negotiations would commence upon service of the summons and complaint. Magnuson further stated that he offered Fry an opportunity to have an independent medical examination and that Fry stated he would consider the suggestion. Finally, Magnuson reported a December 18, 1991, conversation with Fry in which Fry stated that he would not schedule an IME (independent medical examination) and that such an examination was the prerogative of defense counsel.

The District filed a declaration from Fry in which he denied saying that settlement negotiations would commence upon service of the summons and complaint. Fry stated that he had no intent of engaging in further negotiations because he still considered the case to be of nuisance value at best and stated that no further negotiations actually took place.

## III.

### APPELLANT'S CONTENTIONS

Williams contends in this appeal that:

1. The period of time between the filing of the first amended complaint in municipal court on February 20 1992, and the filing of the transferred action in superior court on June 22, 1992, should be excluded from the computation of time under section 583.240.

2. Williams made an adequate showing that the delay in serving the complaint was excusable so as to require defendant to establish prejudice from the delay.

3. The court abused its discretion by dismissing the case.

4. The trial court abused its discretion by denying Williams's motion for relief from default.

## IV.

### DISCUSSION

A. *The trial court did not abuse its discretion in dismissing the case for failure to serve process within two years after filing.*

An order dismissing a complaint for failure to prosecute may not be reversed absent a clear abuse of discretion, which the appellant has the burden to prove. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].) "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478-479 [243 Cal.Rptr. 902, 749 P.2d 339].)

The governing statutes applicable to this case are sections 583.130, 583.410 and 583.420 as amplified by California Rules of Court, rule[2] 373. These sections provide in pertinent part:

*Section 583.130:* "It is the policy of the state that a plaintiff shall proceed with reasonable diligence in the prosecution of an action but that all parties shall cooperate in bringing the action to trial or other disposition. Except as otherwise provided by statute or by rule of court adopted pursuant to statute, the policy favoring the right of parties to make stipulations in their own interests and the policy favoring trial or other disposition of an action on the

---

[2]Rule references are to California Rules of Court.

merits are generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action in construing the provisions of this chapter."

*Section 583.410, subdivision (a):* "The court may in its discretion dismiss an action for delay in prosecution pursuant to this article on its own motion or on motion of the defendant if to do so appears to the court appropriate under the circumstances of the case."

*Section 583.420:* "(a) The court may not dismiss an action pursuant to this article for delay in prosecution except after one of the following conditions has occurred: [¶] (1) Service is not made within two years after the action is commenced against the defendant."

*Rule 373(e):* "In ruling on the motion the court shall consider all matters relevant to a proper determination of the motion, including the court's file in the case and the affidavits and declarations and supporting data submitted by the parties and, where applicable, the availability of the moving party and other essential parties for service of process; the diligence in seeking to effect service of process; the extent to which the parties engaged in any settlement negotiations or discussions; the diligence of the parties in pursuing discovery or other pretrial proceedings, including any extraordinary relief sought by either party; the nature and complexity of the case; the law applicable to the case, including the pendency of other litigation under a common set of facts or determinative of the legal or factual issues in the case; the nature of any extensions of time or other delay attributable to either party; the condition of the court's calendar and the availability of an earlier trial date if the matter was ready for trial; whether the interests of justice are best served by dismissal or trial of the case; and any other fact or circumstance relevant to a fair determination of the issue. The court shall be guided by the policies set forth in section 583.130 of the Code of Civil Procedure."

The courts have clearly held that the policy favoring trial on the merits does not come into play until the moving party establishes a reasonable excuse for the delay. (*Salas* v. *Sears, Roebuck & Co.* (1986) 42 Cal.3d 342, 347 [228 Cal.Rptr. 504, 721 P.2d 590]; *Schumpert* v. *Tishman Co.* (1988) 198 Cal.App.3d 598, 603 [243 Cal.Rptr. 810].)

Williams does not contend that the court failed to consider[3] the matters set forth in rule 373(e) that would be relevant to this case. In fact, the record

---

[3]There is no requirement that the court refer to rule 373(e) or make express findings as to the reason for its decision to dismiss. (*Dubois* v. *Corroon & Black Corp.* (1993) 12 Cal.App.4th 1689, 1696 [16 Cal.Rptr.2d 719].)

contains ample and substantial evidence related to several of the elements enumerated in rule 373(e) that supports the order of dismissal. This evidence is summarized as follows:

| Relevant matters to be considered by the court under rule 373(e) | Evidence supporting order of dismissal |
| --- | --- |
| 1. The availability of the moving party and other essential parties for service of process. | The District was obviously available for service of process at any time. |
| 2. The diligence of plaintiff seeking to effect service of process. | The first summons in this case was not even issued until 20 months after the complaint was filed. Williams made no effort to serve process for two and one-half years and then served the District at an incorrect office. |
| 3. The extent to which the parties engaged in any settlement negotiations or discussions. | Williams did not make her first settlement demand until nearly 15 months after the suit was filed. The District's adjustor advised Williams at that time that the case only had nuisance value. Williams' "negotiation specialist" increased the demand by 2,500 percent in December 1991, which was rejected well before the expiration of the two years within which summons is to be served. |
| 4. The diligence of the parties in pursuing discovery or other pretrial proceedings, including any extraordinary relief sought by either party. | Discovery was not commenced by Williams until after the filing of the motion to dismiss. |

| 5. | The nature and complexity of the case. | The case is a personal injury case with no unusual issues. Williams was informed by May of 1991 that further medical treatment might be required and took no action to amend her complaint for another nine months. |
| 6. | The law applicable to the case, including the pendency of other litigation under a common set of facts or determinative of the legal or factual issues in the case. | There are no unusual legal issues and no related causes. |
| 7. | The nature of any extensions of time or other delay attributable to either party. | The District has neither requested nor caused any extensions or delay in this case. |

**B.** ▮ *The dismissal order is supported by substantial evidence that counsel's explanation for his failure to serve the summons was not credible or reasonable.*

Williams relies on a pair of recent cases, *Putnam* v. *Clague* (1992) 3 Cal.App.4th 542 [5 Cal.Rptr.2d 25], and *Yao* v. *Anaheim Eye Medical Group, Inc.* (1992) 10 Cal.App.4th 1024 [12 Cal.Rptr.2d 856], for the proposition that, in the absence of prejudice to the defendant, an order of dismissal must be reversed whenever the plaintiff presents any reasonable and credible reason for delay and that dismissal is in order only when the plaintiff has failed to present any good cause for the delay.[4] Although *Putnam* has generated substantial comment from appellate courts, it has been rejected by Division One of the Second Appellate District in a recent decision and has been significantly explained in a later decision of the Fifth District, both of which are discussed hereafter. Moreover, even if *Putnam* and *Yao* are

---

[4]This argument exceeds the holdings in *Putnam* or *Yao* and is inconsistent with the principle behind *Denham* v. *Superior Court* (1970) 2 Cal.3d 557 [86 Cal.Rptr. 65, 468 P.2d 193]. In *Denham*, the court held that the trial court always had discretion to deny a motion to dismiss, even when the plaintiff failed to present any excuse for its inaction. (*Id.*, at p. 563.) It follows that the converse is also true; the mere presentation of a credible excuse does not divest the court of its discretion to order dismissal based upon all the relevant circumstances.

accepted on their face, there is nothing in those opinions that compels reversal of the order in the present case.[5]

In *Putnam*, the court reversed an order of dismissal where the plaintiff established a sufficient excuse for failing to serve the summons and complaint in three related cases until more than two years after filing. The three cases were part of a number of malpractice cases brought by the same plaintiff's counsel against the same defendant and involving similar facts. The parties had initially concentrated on one lead case, with the understanding that the evidence developed in that case with respect to the standard of care and negligence would be applied in all the other cases. Extensive discovery was conducted in the lead case before it was settled in June 1989, approximately six months before the service of the summons in the three cases subject to the appeal.

After reviewing the various precedents, the Fifth District court concluded that a single legal standard could not be elucidated from the reported decisions and proceeded to derive a rule that was consistent with prior decisions in the Fifth District.[6] The court explained the rule it extracted in the following terms:

"A plaintiff who has been inattentive to his case for an unreasonable period of time should not be able to nullify the dismissal statute by simply invoking the general policy favoring trial on the merits. The same is true when the plaintiff offers an excuse which, under the factual and procedural circumstances of the particular case, is not credible or is clearly unreasonable. If the excuse is credible and not clearly unreasonable, however, the court should consider all other factors, including prejudice to the defendant, before ordering dismissal. Otherwise the statutory policy favoring trial on the merits could be nullified by a judicially constructed rule.

"When the plaintiff offers some explanation or excuse reflecting a conscious decision not to serve or otherwise prosecute the action, we believe there are two essential questions the court must initially address. Is the explanation credible under all the circumstances? If the facts are disputed and the trial court finds on substantial evidence that the explanation is

---

[5]Both cases were cited to the trial court, which apparently applied them in reaching its decision.

[6]The prior Fifth District decisions reviewed by the court were *United Farm Workers National Union* v. *International Brotherhood of Teamsters* (1978) 87 Cal.App.3d 225 [150 Cal.Rptr. 761]; *Garza* v. *Delano Union Elementary School Dist.* (1980) 110 Cal.App.3d 303 [167 Cal.Rptr. 629]; *Cubit* v. *Ridgecrest Community Hospital* (1987) 194 Cal.App.3d 1552 [240 Cal.Rptr. 346]; and *State Compensation Ins. Fund* v. *Selma Trailer & Manufacturing Co.* (1989) 210 Cal.App.3d 740 [258 Cal.Rptr. 545].

merely an afterthought or pretext designed to cover up neglect, dismissal may be warranted. If the explanation is credible, however, the court should consider whether the reasons given for the decision are clearly unreasonable. That is, could a reasonably competent attorney conclude that delay was justified under the circumstances. If, as in *State Compensation Ins. Fund, Inc. v. Selma Trailer & Manufacturing, Inc., supra,* [210 Cal.App.3d 740] the stated reason simply makes no sense, the plaintiff has not met his burden. In considering this question, however, courts should be careful not to engage in second-guessing attorneys' litigation decisions. If the decision is one which a reasonably competent attorney might have made under the circumstances, the burden should shift to the defendant to show that other factors, such as prejudice, support dismissal." (*Putnam* v. *Clague, supra,* 3 Cal.App.4th at pp. 557-558.)

In applying these principles to the decision of the trial court granting dismissal, the Fifth District concluded that the trial court had not rejected the plaintiff's excuse on credibility grounds and had not concluded that the decision to delay serving the summons until the lead case was settled was unreasonable. The trial court instead had focused on counsel's stated reason that service had been delayed to avoid overburdening the two attorneys who already had four other similar cases to deal with. The Fifth District then concluded that the plaintiffs had fulfilled their burden of establishing a credible and reasonable excuse and reversed the order of dismissal because there was no evidence of prejudice. (*Putnam* v. *Clague, supra,* 3 Cal.App.4th at pp. 563-567.)

In a recent decision affirming dismissal of a complaint which had not been served within two years, the Fifth District emphasized that the standards delineated in *Putnam* applied to the trial court and that a trial court decision based upon substantial evidence must be affirmed. (*American Western Banker* v. *Price Waterhouse* (1993) 12 Cal.App.4th 39, 54 [14 Cal.Rptr.2d 916].) *American Western* involved an action by a corporation against its auditor for alleged professional negligence. The corporation contended that it had not served the complaint because it had been financially unable to finance the litigation. Conflicting evidence was presented by the defendant to show that the principals in the corporation had adequate resources for the purposes. The court held that the order of dismissal was based upon substantial evidence that the proffered excuse was not credible. (*Ibid.*)

In further explanation of its decision in *Putnam,* the Fifth District noted that the court's deference to the reasonable decision of an attorney not to proceed is limited to those cases where counsel actively considers the circumstances and actually makes an affirmative decision, and not to a case in which the delay has been inadvertent. (*Banker* v. *Price Waterhouse, supra,* 12 Cal.App.4th at p. 55, fn. 11.)

*Putnam* was followed in a Fourth District opinion, *Yao v. Anaheim Eye Medical Group, Inc., supra,* 10 Cal.App.4th 1024. *Yao* involved a medical malpractice claim which had been bedeviled by inability to obtain medical records and an appropriate opinion from a standard-of-care consultant. In applying *Putnam,* the court held that there was nothing in the record to impeach the proffered excuse and it did not appear to be an afterthought. (*Id.,* at p. 1030.) The court then concluded that the reasons given by plaintiff's counsel were not unreasonable and reversed the dismissal because there was no showing of prejudice from the delay. (*Id.,* at pp. 1030-1032.)

Division One of this district has rejected the suggestion in *Putnam* that a trial court must accept any credible strategic decision by an attorney. (*Roach v. Lewis* (1993) 14 Cal.App.4th 1179 [18 Cal.Rptr.2d 281].) In *Roach,* the plaintiff's counsel asserted that he had deliberately delayed service of the summons and complaint because he was concerned about settling the case before the plaintiff's injuries stabilized and he wished to avoid the adverse consequences which the stress of litigation might have on her recovery. Plaintiff's counsel detailed his contacts with the insurance carrier to discuss settlement and asserted that the carrier had never objected to the procedure he was following. In denying a motion for reconsideration after the case was dismissed, the court expressly found that the proffered excuse was neither credible nor reasonable.

The *Roach* opinion reviewed *Putnam* in detail, concluding that, although the latter decision was sound on the basis of the facts before the court, its attempt to "formulate an all-purpose test" was unnecessary and its results were problematical and should be rejected. (*Roach v. Lewis, supra,* 14 Cal.App.4th at p. 1184.) The court reasoned that the plaintiff's counsel should not be entitled to credit for being honest with the court and that counsel's strategic considerations are not relevant: "Further, we have doubts about the test itself. Using the first 'prong' of the test, the trial judge is supposed to determine whether the explanation is 'credible under all the circumstances.' [Citation.] This should not be part of a test at all. Attorneys are required to be truthful at all times, and the cause that an attorney espouses should not be advanced simply because the trial judge finds that the attorney is not lying. The second 'prong' is equally inappropriate. If the explanation is found 'credible,' the trial court is supposed to then 'consider whether the reasons given for the decision are clearly unreasonable. That is, could a reasonably competent attorney conclude that delay was justified under the circumstances?' [Citation.] Presumably, if the trial court determines that a reasonably competent attorney would so conclude, that is the end of the inquiry, and dismissal must be denied. Such total deference to counsel's strategy is unwise, particularly when the result is to deprive trial

courts of the ability to run their own calendars. California Rules of Court, rule 373(e), sets forth in detail the relevant matters to be considered by the court in ruling on dismissal motions. Attorneys' strategy calls are not set forth as a relevant matter. For these reasons, we decline to adopt *Putnam* as a 'test' to be applied in cases of this type."[7] (14 Cal.App.4th at p. 1184.)

Based on its discussion, the Second District concluded that the trial court's rejection of the plaintiff's excuse was supported by substantial evidence. (*Roach* v. *Lewis, supra,* 14 Cal.App.4th at p. 1185.)

Appellant does not cite or try to distinguish *Roach,* but does briefly and inaccurately cite a later opinion from the same division, *Dubois* v. *Corroon & Black Corp., supra,* 12 Cal.App.4th 1689, as having "adopted the *Putnam* criterion." In *Dubois,* the court affirmed a judgment of dismissal on the grounds that the court did not abuse its discretion. It cited *Putnam* as a case in which the court "suggested" a two-part analysis of the sufficiency of the defendant's excuse, concluding: "If the court is not satisfied that the plaintiff has fulfilled his burden in this regard, than the trial court may dismiss the case and do so without any consideration of whether the defendant was prejudiced by the delay." (*Id.,* at p. 1695.)

There is nothing in the *Dubois* opinion itself to suggest that the "two-pronged" analysis suggested by *Putnam* played any part in the court's decision.

Turning now to the facts in the case at bench, it is clear that the facts are much closer to those in *Roach* then they are to *Putnam* or *Yao.*

Unlike the latter two cases, the instant case does not relate to any other litigation between the parties or law firms, involves no complex issues and is not a malpractice case in which a certificate of merits was required. Like *Roach,* it is a case in which counsel made a calculated decision to delay service of process for reasons which do not justify reversal of the trial court's decision.

Williams's counsel presented no extenuating circumstances or reasonable explanation of any kind for his inaction during the 25-month period from filing the complaint to the filing of the amended complaint in February 1992. Williams's counsel was advised by Dr. Wong of the potential need for surgery in May 1991, nine months before the amended complaint was filed. Even assuming that it was reasonable to await Dr. Wong's supplemental

---

[7]In a footnote to its opinion, the court also declined to follow *Yao.* (*Roach* v. *Lewis, supra,* 14 Cal.App.4th at p. 1184, fn. 1.)

report which detailed the projected medical costs involved, Williams still had two months in which to file an amended complaint and transfer the case to superior court. Williams has presented no excuse or strategic justification for allowing these times to go by.

Thus, the evidence before the trial court supports the conclusion that Williams treated this case with considerable indifference. The summons on the initial municipal court complaint was not even issued until October 1, 1991, 20 months after the complaint was initially filed. Fifteen months was allowed to expire from the time the District offered to settle the case for $232 until the superior court complaint was filed. The "settlement negotiations" were not even conducted by Williams's attorney, but rather by an "investigator" and a "negotiation specialist." Finally, the credibility of Williams's motion was directly attacked by the District's opposition papers, and particularly by the declaration of Mark T. Fry which contradicted and denied that he had made certain statements attributed to him.

Under these circumstances, there was sufficient basis for the court to conclude that Williams's counsel was only interested in settling the case with minimal effort and that their claim that they had to transfer the case to superior court before serving process was a pretext and "afterthought alibi" of the type criticized by *Putnam* and *Yao*.

Williams never cited any authority to support the argument that the case had to be transferred to the superior court before service of process. Section 396[8] plainly allows for transfer of a case to superior court without the necessity of amending the pleadings. Under the terms of the statute, the municipal court may make the determination that transfer is required on the basis of motion and hearing. Moreover, since the amended complaint was not verified, the filing of the amended complaint itself did not trigger the

---

[8]Section 396 provides in relevant part: "[I]f summons is served prior to the filing of the action or proceeding in the court to which it is transferred, as to any defendant, so served, who has not appeared in the action . . . the time to answer or otherwise plead shall date from service upon such defendant of written notice of filing of such action . . . in the court to which it is transferred.

"If an action or proceeding is commenced in or transferred to a court which has jurisdiction of the subject matter thereof as determined by the complaint or petition, and it thereafter appears from the verified pleadings, or at the trial, or hearing, that the determination of the action or proceeding, or of a cross-complaint, will necessarily involve the determination of questions not within the jurisdiction of the court, in which the action or proceeding is pending, the court, whenever such lack of jurisdiction appears, must suspend all further proceedings therein and transfer the action . . . .

"An action or proceeding which is transferred under the provisions of this section shall be deemed to have been commenced at the time the complaint or petition was filed in the court from which it was originally transferred."

transfer. (*Schwenke* v. *J & P Scott, Inc.* (1988) 205 Cal.App.3d 71 [252 Cal.Rptr. 91].) Thus, the trial court could have reasonably concluded that the justification espoused by Williams's counsel was neither reasonable nor credible and his true motive was to file his motion before service so that the District would not be able to oppose it.

The fact that some evidence supporting Williams's assertions was presented in the record provides no basis or reversal because the trial court ruled against Williams on substantial evidence.

Similar excuses were presented to and rejected[9] by the appellate court in *Ladd* v. *Dart Equipment Corp.* (1991) 230 Cal.App.3d 1088 [281 Cal.Rptr. 813]. In *Ladd*, the plaintiff had sued his employer and several affiliated corporations with respect to an injury that was also the subject of a workers' compensation claim. The complaint was served two years and five months after it was filed. In response to the motion to dismiss, the plaintiff's attorney stated that the workers' compensation claim had been settled only eight months before the complaint had been served and that discovery had been commenced. After the motion to dismiss was granted, the plaintiff filed a motion for reconsideration which presented evidence that there had been some discussions shortly after the case was filed that the workers' compensation claim should be resolved first, that all defendants were insured by the same carrier, which had knowledge of plaintiff's injuries, and that there had been no prejudice. In holding that the trial court did not abuse its discretion in ordering dismissal, the Court of Appeal ruled:

"The date upon which the worker's compensation matter was resolved was nearly seven weeks prior to the expiration of the two-year deadline for service of process. Despite a seven-week window of opportunity within which the complaint could have been served, plaintiff's counsel failed to make any effort to serve the complaint until after receiving a notice by the superior court seeking to dismiss the case on the court's own motion. . . . The deliberate refusal to serve the complaint did not constitute diligence.

"Furthermore, the trial court reasonably could have concluded that the lack of activity was not excusable. [Citation.] The fact that there was other litigation pending, the worker's compensation proceeding, did not justify failing to serve the complaint. . . .

---

[9]The *Ladd* court reversed the order of dismissal and remanded it to the trial court on grounds not applicable to the instant case, namely that the trial court had failed to exercise its discretion because it felt that it was compelled to grant the motion by an appellate court opinion. (*Ladd* v. *Dart Equipment Corp., supra*, 230 Cal.App.3d at pp. 1105-1107.) No such grounds for appeal are raised in the instant case.

"Additionally, the fact that plaintiff's employer and its insurance carrier were given notice of the complaint does not justify the unreasonable delay in serving the first amended complaint." (230 Cal.App.3d at p. 1101.)

Thus, *Ladd* establishes that the excuses offered by plaintiff's counsel in that case were not reasonable and that the trial court acted within its discretion in rejecting them.

Williams cites *Ladd* for the proposition that prejudice cannot be inferred in every case where service of process has been delayed beyond two years. A close look at *Ladd* reveals the trial court had subsequently reconsidered its order of dismissal and then reaffirmed it because it felt that a presumption of prejudice compelled dismissal of the case and thus failed to exercise its discretion under rule 373(e). It was this subsequent order on reconsideration that was reversed, while the initial order of dismissal was affirmed. There is no claim in the instant case that the trial court failed to use discretion or to consider the elements of rule 373(e). Therefore, the rule applicable to the instant case was stated by the court in *Ladd*, as follows: "However, on appeal from a dismissal order, when a trial court finds that the period of delay has been without sufficient justification, there is no requirement that prejudice be shown in the face of unjustifiable delay." (230 Cal.App.3d at p. 1102.)

## C. *The time during which the municipal court lacked jurisdiction to proceed is not relevant to the validity of the order of dismissal.*

■ Williams's argument that the time between the filing of the first amended complaint on February 20, 1992, and the service of the summons on August 5, 1992, must be excluded from the computation of time under section 583.240 is without merit. The argument is irrelevant because the two-year period in which to effectuate service had already expired before the first amended complaint was even filed. Moreover, the time during which transfer was pending should be properly included even if transfer proceedings had been initiated before the expiration of the two years.

Of the four categories listed in section 583.240,[10] Williams relies only upon subdivisions (b) and (d). Subdivision (b) is not applicable because the suspension of proceedings in the municipal court under section 396 does not affect service of process. To the contrary, section 396 expressly contemplates that service can take place during the time that proceedings are being

---

[10]The four categories of conditions excluded from the time for effecting service are:

"(a) The defendant was not amenable to the process of the court.

"(b) The prosecution of the action or proceedings in the action was stayed *and the stay affected service.*

"(c) The validity of service was the subject of litigation by the parties.

transferred by providing that the defendant's time to respond to the complaint does not run until defendant is served with written notice of the transfer.

Additionally, section 396 provides that the transferred case shall be deemed to have commenced on the date that it was originally filed. The section contains no provision extending the time for service of process. Since the summons and complaint could have been served while the transfer was pending, the so-called suspension of jurisdiction of the municipal court was not a stay affecting service within section 583.240, subdivision (b).

The exclusion provided by section 583.240, subdivision (d) for service which is "impossible, impracticable, or futile due to causes beyond the plaintiff's control" must be strictly construed against the plaintiff. As the Law Revision Commission Comment states for this section: "The excuse of impossibility, impracticability, or futility should be strictly construed in light of the need to give a defendant adequate notice of the action so that the defendant can take necessary steps to preserve evidence. Contrast Section 583.340 and Comment thereto (liberal construction of excuse for failure to bring to trial within a prescribed time). This difference in treatment is consistent with one aspect of the policy announced in Section 583.130— plaintiff must exercise diligence—and recognizes that service, unlike bringing to trial, is ordinarily within the control of plaintiff." (See Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc., § 583.240 (1993 pocket supp.) p. 107.)

Williams cites *Graf* v. *Gaslight* (1990) 225 Cal.App.3d 291 [274 Cal.Rptr. 759], for the proposition that service is impossible during the period of time that a case is dismissed, a proposition that is irrelevant because the instant case was not dismissed prior to service of the summons. In fact, the court in *Graf* affirmed the dismissal of the action for failure to effect service within three years. (*Id.*, at p. 298.)

The plaintiff in *Graf* filed suit on January 17, 1986. On July 13, 1988, the case was dismissed on the court's own motion, and the dismissal was set aside on motion for relief from default on January 25, 1989, one week after the running of the three years. Two defendants were served on February 9, 1989, twenty-five days after the running of the three years. The defendants then moved to dismiss for failure to file proof of service within three years. The court held that all but 16 days of the time during which the case was dismissed should be charged to plaintiff because it was within his control to

---

"(d)   Service, for any other reason, was impossible, impracticable, or futile *due to causes beyond the plaintiff's control*. Failure to discover relevant facts or evidence is not a cause beyond the plaintiff's control for the purpose of this subdivision." (Italics added.)

learn of the dismissal and take timely action to set it aside. (*Ibid.*) Since the 16-day credit was insufficient to make the service timely, the dismissal was affirmed. (*Ibid.*)

Williams cites *Damjanovic* v. *Ambrose* (1992) 3 Cal.App.4th 503 [4 Cal.Rptr.2d 560], for the proposition that the court must exclude the time during which a plaintiff, who is also a defendant in a criminal action, is prohibited by Government Code section 945.3 from serving process upon a peace officer, who is a defendant in the civil action. *Damjanovic* is obviously irrelevant since plaintiff herein is not a defendant in a criminal action and the school district is not a peace officer or the employer of a peace officer for the purposes of this action. The court in *Damjanovic* held that the fact that certain defendants were peace officers protected by Government Code section 945.3 did not excuse failure to serve process on the civilian defendants within three years. (3 Cal.App.4th at pp. 508-510.) In reaching this result, the court strictly construed section 583.240 in conformance with the legislative intent.

Williams cites *Schwenke* v. *J & P Scott, Inc.*, *supra*, 205 Cal.App.3d 71, for the proposition that some of the time when a cross-complaint was on file in municipal court must be excluded from the time for determining when the five-year statute runs, but that the time during which the plaintiff failed to act diligently may be included. In affirming dismissal, *Schwenke* held that the filing of an unverified cross-complaint seeking relief in excess of the jurisdiction of the municipal court did not suspend the court's jurisdiction, and therefore included the time from filing the complaint to the filing of the motion for transfer. (*Id.*, at pp. 75-79.) Finally, the court held that the plaintiff had not acted diligently to expedite the case and therefore could not assert that the time during which transfer was pending should be excluded on grounds of impossibility. (*Id.*, at pp. 79-80.) Since *Schwenke* is a five-year trial case in which the court is required to construe the statute liberally in favor of the plaintiff, it follows that its principles must be applied to the instant two-year service case in which strict construction against the plaintiff is required.

Williams cites *Wheeler* v. *City of Santa Monica* (1990) 219 Cal.App.3d 1554 [269 Cal.Rptr. 175], for the proposition that the period during which a plaintiff has acted timely to transfer an action from municipal to superior court should be excluded from the five-year trial statute. *Wheeler* held, in affirming dismissal of the case, that the transfer of the case from municipal court to superior court was not timely when the plaintiff failed to pay the transfer fees promptly after the order of transfer was entered. (*Id.*, at pp. 1561-1562.) The court further held that the municipal court retained jurisdiction of the case until the transfer fees were paid. (*Id.*, at p. 1562.)

The results and reasoning of the four cases by Williams support the order of dismissal herein. Williams did not take any action pertinent to the transfer of the case from municipal court until *after* the two-year period had run. Therefore, as in *Graf*, even if all of the transfer time were to be counted, service would not have been accomplished within the two years. Additionally, most of the transfer-related delay was within the control of Williams. Williams waited from November 25, 1991, when the final report from Dr. Wong was received, until February 20, 1992, to file the amended complaint, and then waited to March 16, 1992, to file a motion for transfer. Since the amended complaint was not verified, *Schwenke* requires that this time be counted against Williams. After the motion was granted on May 20, 1992,[11] Williams did not effectuate transfer to the superior court until June 15, 1992, did not obtain a superior court summons until July 17, 1992, and then delayed service of process until August 5, 1992. This latter delay must be counted against Williams under *Wheeler*. Thus, even if section 583.240 required exclusion of some of the transfer time, almost all of it was *within the control of the plaintiff* and was properly counted in support of the motion to dismiss.

D.   *Appellant has not established any basis for relief from default under the amended version of section 473.*

Williams contends that her motion for relief from default should have been granted as a matter of law under the 1992 amendment to section 473 that became effective January 1, 1993. This amendment included dismissals among the category of orders that a court was required to vacate if an attorney submitted a sworn affidavit of fault. Williams contends that the trial court erred by applying the "excusable neglect" standard that was applicable prior to January 1, 1993, and should have determined that relief was mandatory under the new statute.

Unfortunately for Williams, the 1992 amendment to section 473 is not retroactive and does not apply to dismissals entered prior to its effective date. In *Beeman* v. *Burling* (1990) 216 Cal.App.3d 1586, 1604-1607 [265 Cal.Rptr. 719], the court held that the 1988 amendment to section 473, which required the court to vacate judgments caused by attorney mistake, did not apply retroactively to defaults entered prior to the effective date of the statute. The court held that retroactive application would substantially affect the rights of the parties and was impermissible under *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388 [182 P.2d 159]. The same

---

[11]Although Williams relied upon a declaration from a legal secretary that May 20 was the earliest date upon which a hearing could be obtained from the municipal court clerk, Williams made no effort to shorten time or otherwise advance the motion for hearing.

principle applies to the 1992 amendment and precludes application of the amended statute to the instant dismissal. Therefore, the trial court properly applied the "excusable neglect" standard to the instant case.

Additionally, Williams has waived the right to argue that the 1992 amendment governs these proceedings by failing to raise it in the trial court. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 311, p. 321.) The motion before the trial court was expressly based upon the "excusable neglect" standard and the amended statute was never brought to the attention of the trial court.

Since the court had already heard and ruled upon the District's motion to dismiss, the motion for relief from default could properly have been used to present new justification for failure to make a full and complete opposition to the dismissal motion. (See *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 388-389 [38 Cal.Rptr. 693].) A motion for relief from default may not be used to merely amplify or supplement the evidence and arguments that were presented in opposition to the original motion to dismiss. (See *San Francisco Lathing, Inc.* v. *Superior Court* (1969) 271 Cal.App.2d 78, 83 [76 Cal.Rptr. 304].) The motion for relief from default in the instant case was merely a repeat of the original opposition to the motion for dismissal, to the extent that Williams refiled copies of the same declarations. The motion itself improperly requested relief from the original default in serving the summons and complaint and did not allege any default in responding to the motion to dismiss because none had occurred. The default in service had already been adjudicated and could not be reopened by these means.[12]

Assuming solely for the purposes of argument that the trial court could have redetermined the merits of the dismissal order in considering the motion for relief from default, the trial court could have properly denied the motion on the grounds that the erroneous determination by Williams's counsel to delay service of process until after transfer of the action to superior court did not entitle Williams to relief. Williams's counsel never confessed to having been surprised, acted inadvertently or committed any neglect. The posture assumed by Williams's counsel was that he had acted intentionally and at most was guilty of a mistake of law. In order to grant relief on the latter ground, the court would have had to find that the misconception of the law was reasonable and that counsel's failure to discover the correct law was justifiable and not the result of negligence.

---

[12]Although Williams also filed a motion for reconsideration which was denied, Williams does not urge such denial as error in this appeal, and a copy of Williams's motion for reconsideration is not included in the record on appeal.

(*Robbins* v. *Los Angeles Unified School Dist.* (1992) 3 Cal.App.4th 313, 319 [4 Cal.Rptr.2d 649].) Williams cited no authority to the trial court and cites no authority to this court to support the conclusion that delaying service was necessary. Williams's counsel did not concede that a mistake had been made and presented no evidence to show that his mistake was justified or that his failure to act properly was justified. Therefore, denial of Williams's motion for relief was substantively correct.

## V.

### DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Lillie, P. J., concurred.

**JOHNSON, J.**—I respectfully dissent.

Contrary to my colleagues, I apply the *Putnam* standard,[1] and in doing so conclude the trial court abused its discretion in dismissing this case. In my opinion, *Putnam* provides long overdue guidance to trial courts in exercising their discretion to dismiss cases where service is not accomplished within two years after filing the complaint. I have considered and expressly reject the criticism of this standard found in *Roach* v. *Lewis* (1993) 14 Cal.App.4th 1179 [18 Cal.Rptr.2d 281], a recent decision of Division One of this court.

In *Putnam*, the Fifth District analyzed the law governing a court's discretion to dismiss an action for delay in prosecution under Code of Civil Procedure section 583.420, subdivision (a)(1). In that case three medical malpractice cases had been dismissed for failure to serve the complaint within two years after the filing date. Plaintiffs offered three excuses for this delay: (1) the pendency of similar cases arising out of the same surgical technique out of which would come a "test case"; (2) extensive discovery and production of evidence; and (3) deliberate staggering of service of process so as to avoid creating unmanageable demands on both parties and their counsel. The court reviewed several Court of Appeal cases where plaintiffs had offered some explanation to excuse or justify the delay. In some of those cases the appellate court concluded the plaintiff met his burden and dismissal was unwarranted. In other cases, however, the appellate court concluded the plaintiff's showing was insufficient and dismissal was justified even if the defendant did not demonstrate actual prejudice from the delay.

---

[1] *Putnam* v. *Clague* (1992) 3 Cal.App.4th 542 [5 Cal.Rptr.2d 25].

In order to provide some guidance to the lower courts in the exercise of their discretion when determining excusable delay, the *Putnam* court distilled a two-part analysis from previous case law. First, the trial court must ask, is the explanation credible under all the circumstances? If the facts are disputed and the trial court finds on substantial evidence the explanation is merely an afterthought or pretext designed to cover up neglect, dismissal may be warranted. Second, if the explanation is credible, the court should consider whether the reasons given for the decision are clearly unreasonable. That is, could a reasonably competent attorney conclude that delay was justified under the circumstances? .

I believe this analysis correctly states the rule for courts to follow in determining whether a plaintiff has offered sufficient evidence of excusable delay in service of the summons. The subjective first prong of the test gives appropriate deference to the trial courts' findings of fact while the objective second prong provides reasonable boundaries within which the lower court may exercise its discretion. The inattentive plaintiff will not be able to nullify the dismissal statute by simply invoking the general policy favoring trial on the merits. However, if an offered excuse is both credible and not clearly unreasonable, the court will consider all other factors, including prejudice to the defendant.

Since the *Putnam* decision there have been four published opinions of the Court of Appeal, and one depublished opinion regarding the discretionary dismissal statute.

The most recent of these cases, *Roach*, was decided in April of 1992 by Division One of this court, and declined to follow the *Putnam* standard. The *Roach* court questioned the soundness of the two-pronged analysis. Regarding the credibility prong, the court said attorneys are required to be truthful at all times, and the attorney's cause should not be advanced simply because the trial judge finds the attorney is not lying. I do not think it is granting too much deference to attorneys and their litigation strategies to employ a reasonable attorney standard. The Legislature does not consider immediate service of pleadings to be an absolute good or it would set a much shorter time limit with exceptions limited to situations where it was impossible to locate or effect service on defendants. Instead the Legislature recognizes there may be other, worthwhile reasons for delaying service for up to three years and an absolute entitlement to delay for two years. True, it may irritate courts when their dockets—and thus their backlog statistics—include unserved complaints. Yet the interests of litigants, the possibilities of quiet settlement, and similar interests may be well served by some restraint in serving complaints on the other side. The "reasonable attorney" standard

propounded in *Putnam* supplies a sound approach for recognizing and reconciling these interests.

Just two months before *Roach*, Division One had the opportunity to decide a related issue in the case of *Dubois* v. *Corroon & Black Corp.* (1993) 12 Cal.App.4th 1689 [16 Cal.Rptr.2d 719]. There, the court was considering a discretionary dismissal for failure to prosecute within three years. Division One cited to *Putnam*, but did not expressly follow the two-pronged rule, nor reject it. Instead, the court invoked the credibility first prong as an all or nothing test for sufficiency of excusable delay and then instructed the lower court to move to a "totality of the circumstances" test in deciding whether dismissal is appropriate. The court affirmed the dismissal of an action for not bringing the matter to trial within three years after the action is commenced. The case was remarkable though due to a 31-month period where there was absolutely no activity done on the file.

On the other hand, the Fourth Appellate District seems clearly to have adopted the *Putnam* standard in the case of *Yao* v. *Anaheim Eye Medical Group, Inc.* (1992) 10 Cal.App.4th 1024 [12 Cal.Rptr.2d 856]. The *Yao* case was an action alleging medical malpractice where the Court of Appeal reversed the lower court's order granting defendant's motion to dismiss for failure to serve the complaint within two years. The plaintiff tendered two justifications for the delay in service of the summons and complaint: first, the plaintiff had sought two expert standard of care reviews, and, second, plaintiff had substituted counsel during the time the complaint remained unserved. The court cited *Putnam* in reversing the trial court. The court held plaintiff had offered a legally sufficient excuse for his failure to serve the complaint, at which point the burden shifted to the defendants to show actual prejudice.

Applying the *Putnam* standard to the instant case, I conclude the trial court abused its discretion in dismissing this case for failure to serve within two years. As to the first prong, the record fails to support a finding appellant's avowed explanation lacks credibility. This is not one of those cases where plaintiff's counsel was inactive for two or three years and then asks the trial court to believe he or she was thinking about the case and had a secret reason for delaying service. To the contrary, this record is replete with evidence plaintiff's counsel was engaged in continuing investigation and settlement negotiations about the case. Moreover, the results of those investigations and negotiations are consistent with the attorney's explanation for why he delayed serving the complaint.

As to the second prong, this is one of those situations where a reasonable attorney might well decide it was in his client's best interests to delay

service. Furthermore, it is a situation where a reasonable attorney would know the defendant was not suffering prejudice merely because the complaint had not been *formally* served on it. Indeed respondent school district knew of plaintiff's cause of action even before the complaint was filed, was aware of the complaint's existence less than five months after it was filed, and *received a copy of the complaint itself* less than fourteen months after the filing.

As the record clearly reflects, for more than a year after filing the complaint, plaintiff's counsel was seeking to negotiate a suitable settlement of what he regarded as a modest claim without involving his client in the costs and inconvenience of the full-scale litigation process. He knew as any reasonable attorney knows that once a complaint is served, it generally triggers a series of litigation events which are expensive and time-consuming for both sides. An answer must be filed, almost invariably followed by demurrers and opposition to demurrers, various motions, hearings, conferences, summary judgment proceedings, and the like. This appears to be an eminently reasonable justification for delaying service while there is a possibility of reaching a suitable settlement.

Appellant's counsel was not seeking to hide its lawsuit from respondent during these negotiations. Indeed plaintiff had filed a timely claim with respondent school district months before filing the complaint. Respondent was aware of the complaint itself soon after it was filed. On June 13, 1990, less than five months after the filing of the complaint, respondent's adjuster contacted appellant's attorney seeking a copy of that complaint. A few months later the adjuster renewed his request for proof of filing of the complaint. It should be noted the adjuster did not ask to be served with the complaint, but only for a copy of the complaint and proof it had been filed. (Presumably this was because respondent did not want to trigger the litigation process any more than plaintiff did.)

Meantime, appellant's counsel was seeking to determine the severity of plaintiff's injuries. By April 11, 1991, he had enough information to submit a demand for $5,000 to respondent based on medical specials of $842. Plaintiff's counsel accompanied this demand with medical bills *and a copy of the complaint.* A week later respondent's adjuster rejected the demand and counteroffered at $232, purportedly based on the district's own investigation of the event.

Finally, on October 1, 1991, still well within the two-year period, appellant obtained a summons on the complaint from the municipal court. Three days later, however, plaintiff's counsel received a disturbing report from the

doctor who was treating his client. The condition was far more serious than earlier diagnoses had suggested. By late November, the doctor reported plaintiff would require surgery and the medical specials suddenly increased tenfold—to over $8,000.

Appellant's counsel immediately forwarded the new medical report to respondent's adjuster, along with a settlement demand for $125,000. When respondent rejected this offer, appellant realized this was no longer a municipal court case and moved expeditiously to get it where it belonged, in superior court. He filed an amended complaint on February 20, 1992, seeking damages within the superior court's jurisdiction and a transfer order to superior court on March 16. When that transfer was complete, appellant's counsel moved expeditiously to serve this expanded legal action on respondent.

Appellant in effect tenders two explanations for the delay in serving respondent, each explanation covering a different period of the delay.

The first explanation relates to the first 18 months when appellant's counsel thought he was dealing with a $5,000 case in municipal court. He was attempting to negotiate a settlement somewhere in that range without activating a full-scale litigation process which would have imposed costs on litigants and court alike. This appears reasonable, even commendable, conduct for an attorney handling such a case. Statutes of limitations compel plaintiffs to file lawsuits early on just to preserve their option to sue. It is not always in the best interests of the parties or of the judicial system itself to force them to proceed full bore into the litigation contest while there remains a reasonable prospect of settlement without litigation. This is especially so when the defendant is fully aware of the lawsuit and its nature, as respondent was in this case.

Appellant's second explanation relates primarily to the period after he began learning unsettling news about the true extent of his client's injuries. From that time on, plaintiff's counsel was busy effecting a transfer from what he now knew to be the wrong court into the right court. In his brief, appellant asks that a good portion of this period be "tolled" and simply not considered a part of the period service was delayed.

Appellant might have had to depend on some sort of "tolling" if these events had delayed service beyond the mandatory three-year period. But it must be remembered appellant effected service in less than three years. The courts have "discretion" to dismiss this case in appropriate circumstances because appellant took longer than two; but they have no duty to do so. As a result, appellant need not establish this period was "tolled."

The only question is whether it was reasonable behavior for an attorney to draft an amended complaint, move to transfer to superior court, etc., without serving on respondent an outmoded complaint which reflected the case would be heard in a different, soon to be erroneous, court. In my opinion, what appellant's counsel did was not the only reasonable course he could have followed. But it was *a* reasonable course, and indeed probably the *most* reasonable one, given the circumstances of this case. This is especially true where as here service of the outmoded complaint would have been at best a formality since respondent already had a copy of that complaint and knew its contents.

For these reasons, I would reverse and allow plaintiff to have her day in court.