Filed 8/14/14  Hills v. J.B. Hunt Transport CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| FREDRICK HILLS,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>J.B. HUNT TRANSPORT, INC. et al.,<br><br>     Defendants and Respondents. | A139237<br><br>(Alameda County<br>Super. Ct. No. HG08401796) |

In September 2006, appellant Frederick Hills was injured while working as a temporary employee at a Mervyn's distribution center.  In August 2007, he retained counsel who submitted a claim to Mervyn's, and who heard nothing in reply.  In August 2008, counsel filed a personal injury complaint, naming as defendants Mervyn's LLC (Mervyn's) and Does 1 to 20.  Mervyn's had declared bankruptcy days before, a bankruptcy that was quickly brought to the attention of Hills's counsel who, despite many representations to the trial court, did nothing to seek relief from the bankruptcy court.  In September 2012, counsel learned the names of the trucking companies at the scene at the time of the accident, and amended the complaint to name J.B. Hunt Transport, Inc. (J.B. Hunt), and Werner Enterprises, Inc. and C.L. Werner, Inc. (usually collectively, Werner) as Doe defendants.

In April 2013, J.B. Hunt and Werner separately moved to dismiss for failure to serve the complaint within three years.  The trial court granted both motions and dismissed defendants from the case.  Hills appeals, contending that the three-year-service requirement was tolled.  We disagree, and we affirm.

# BACKGROUND

### The Accident

On September 8, 2006, Hills was loading and unloading merchandise at the Mervyn's distribution center in Fremont, working there as an employee of Benchmark Staffing, an agency that supplied temporary workers. A truck pulled away from the dock, injuring Hills. Hills received worker's compensation from Benchmark, and, in fact, the worker's compensation insurer would later intervene in Hills's lawsuit.

In August 2007, Hills retained the Dunnion Law Firm (Dunnion firm or Hills's attorneys) to represent him. According to the declaration of Glenda de Guzman of that firm, they were retained "expressly to pursue [Hills's] claim against Mervyn's, who he believed was the only party responsible for his injury."

### The Proceedings Below

On August 1, 2008, a year after its retention and almost two years after the accident, the Dunnion firm filed a complaint against Mervyn's and Does 1 to 20.[1] It developed that Mervyn's had filed for bankruptcy days before the complaint was filed, and the case against Mervyn's was automatically stayed. By November 3, 2008, the Dunnion firm had obtained the notice of bankruptcy.

On December 1, 2008, the Dunnion firm filed its first case management statement on behalf of Hills, representing that he "anticipates filing for relief from stay to the trustee of the Bankruptcy Court in order to proceed with discovery and trial of the case." This was followed by a March 26, 2009 case management statement, in which Hills's attorneys made the following statements: "Plaintiff anticipates filing for relief from stay to the trustee in the Bankruptcy Court in order to proceed with discovery and trial of case.

---

[1] The record is not clear what, if anything, the Dunnion firm did between August 2007 and August 2008, other than notifying the "Mervyn's . . . claims department of the claim." All de Guzman's declaration says is this: "After the undersigned notified Mervyn's third party claims department of the claim, and later, of the filing of the lawsuit, the third party claims department did not contact the undersigned ever again. Other than advising that the claim was opened, the third party claims department never advised that liability was denied on any grounds."

[¶] . . . [¶] Plaintiff requests a continuance of 120 days for further CMC so that Plaintiff may continue in efforts to lift stay with the US Bankruptcy Trustee in Delaware." And case management statements filed on behalf of Hills over the next 25 months—on May 21, 2010, November 19, 2010, and May 2, 2011—contained essentially identical language.[2] In fact, the Dunnion firm never sought any such relief.

As to what in fact did occur, the record is sparse indeed. All we have besides the register of actions is the de Guzman declaration, which states in pertinent part as follows:

"4. . . . I informed Judge Winifred Smith of this court at the case management conference on December 16, 2008, that Mervyn's had filed chapter 11 prior to the complaint filing. She would set the matter out multiple times by 6-month compliance periods, in case Mervyn's made a special appearance, stayed the action, or changed it's [*sic*] bankruptcy status, including coming out of bankruptcy.

"5. On January 6, 2009, February 6, 2009, and March 17, 2009, I spoke with Christopher Samis, one of Mervyn's bankruptcy attorneys in Delaware. During those conversations Mr. Samis refused to stipulate for relief from the stay, refused to provide any limited discovery about the incident, and confirmed that Mervyn's was self-insured up to $250,000, which would constitute assets protected in the bankruptcy. He offered to provide me with the insurance policy supporting the self-insured retention; the policy was received by email dated March 17, 2009. . . .

"6. Thereafter, Mervyn's never made a special appearance or filed a stay prior to the November 30, 2009, case management conference. Consistent with Rule 3.650(a), on November 19, 2009, I filed the "Notice of Stay of Proceedings;' . . . . On December 22, 2010, attorneys for Mervyn's filed their 'Notice of Suggestion of Pendency of Bankruptcy and Automatic Stay of Proceedings.' . . . .

---

[2] The May 2, 2011 statement read: "Plaintiff anticipates filing for relief from stay to the chapter 7 bankruptcy trustee of the Bankruptcy Court when that Trustee has been appointed, in order to proceed with discovery and trial of case. [¶] . . . [¶] Plaintiff requests a continuance of 180 days for further CMC so that Plaintiff may continue in efforts to lift stay with the US Bankruptcy Chapter 7 [*sic*] if/when that Trustee has been appointed. Chapter 7 has not yet been ordered. . . ."

"7. On May 17, 2011, Mervyn's attorney, Christina Sein, specially appeared at the compliance hearing on May 17, 2011. The judge's clerk informed us the hearing was continued by tentative ruling to December 6, 2011. After the hearing, I spoke with Christina Sein regarding a proposal to obtain limited discovery from Mervyn's. She advised she would have senior counsel from Delaware contact me. From August 23, 2011 to May 7, 2012, I had several telephone conversations with Christopher Samis, Mervyn's counsel in Delaware, who ultimately informed me that his client would agree to provide information confirming that Mervyn's never owned or operated any truck in the subject warehouse on the day of the accident, and would provide information and certain documents showing three trucking companies that may have provided such services, *in exchange for a dismissal without prejudice* of Mervyn's. A declaration to be signed by a Mervyn's officer, comprising this agreement, was drafted and reviewed multiple times over several months. I finally received from Mr. Samis, the agreed declaration signed and dated on May 18, 2012 . . . . This declaration, however, did not identify the trucking companies. That information would not be received until September 4, 2012."

On August 17, 2012, the Dunnion firm filed a case management statement advising that it had dismissed Mervyn's, which was going to provide information regarding certain trucking companies operating in its warehouse. The firm also requested a continuance of 90 days for a further case management conference, "so that Plaintiff may obtain from Mervyn's the names of truck companies operating in their warehouse on the date of the accident. These truck companies will replace the Doe defendants . . . ."

On September 7, 2012, the trial court granted the Dunnion firm's request to amend the complaint to substitute the names of Doe defendants: J.B. Hunt for Doe 1, J.B. Hunt Logistics, Inc. for Doe 2, Werner Enterprises, Inc. for Doe 3, and C.L. Werner, Inc. for Doe 4. J.B. Hunt was served with the summons and complaint on September 18, 2012, and Werner on September 21, 2012.

It was now over six years since the accident and more than four years since the complaint.

**The Motions to Dismiss**

Werner answered the complaint on October 30, 2012, and J.B. Hunt on November 5, 2012, both representing that they never stipulated to extend the time for service of the summons and complaint.

In April 2013, Werner and J.B. Hunt separately moved to dismiss Hills's action for failure to serve the complaint within three years pursuant to Code of Civil Procedure section 583.210.[3]  The motions were set for hearing in June, but were later advanced to May 24.

On May 3, 2013, the Dunnion firm filed what it called a "Motion by Plaintiff to Exclude Time That Case Was Under A Bankruptcy Stay From The 5-Year Period Per C.C.P. Section 583.340(b); Request To Vacate Trial Date, And Request To Set Trial For Trial Setting Conference."  The motion requested a ruling from the trial court that the five-year period for bringing Hills's action to trial under section 583.360 would not expire on August 1, 2013, and to vacate the trial date of June 28, 2013 because, among other reasons, Hills was in prison and was not scheduled to be released until August 15.[4]

On May 13, 2013, Hills filed his opposition to the motions to dismiss.  Both Werner and JB Hunt filed replies.

As noted, the motions had been set for hearing on May 24, prior to which the court had issued a tentative ruling.  It was contested, and the matters came on for hearing,

---

[3] All statutory references are to the Code of Civil Procedure except where otherwise noted.

[4] The motion was brought against the background that trial had been set for June 28.  At that time, however, Hills was incarcerated and was not scheduled to be released until August 15.  Hearing on Hills's motion was set for May 24, the same date as the hearings on the motions to dismiss.  On May 14, Michael V.W. Crain, as attorney for the Intervenor (The Insurance Company of the State of Pennsylvania, a Division of American International Group), filed a declaration in support of Hills's motion.  On May 20, Werner filed evidentiary objections to the intervenor's declaration, and on May 22, J.B. Hunt filed a joinder to Werner's objections.  Because the motions to dismiss were granted, Hills's motion was dropped and the trial court did not rule on the objections to the intervenor's declaration.

5

following which the trial court granted both motions to dismiss, in substantially identical orders. The order as to J.B. Hunt is illustrative:

"This action was filed on August 1, 2008, and the J.B. Hunt Transport LLC was not served with the summons and complaint until September 18, 2012, more than four years later. That is untimely pursuant to Code of Civil Procedure section 583.210, and Plaintiff fails to demonstrate that any basis for tolling under section 583.240 applies here. The three year period in which defendants must be served begins to run from the date the complaint is filed, not from the date the Doe amendment was filed. (See *Highlanders v. Olsan* (1978) 77 Cal.App.3d 690, 695.)

"Although former Defendant Mervyn[']s LLC filed for bankruptcy, such that this action was stayed as to Mervyns, this action was NOT stayed as to entities that had not filed for bankruptcy, like J.B. Hunt Transport LLC. (See *Barnett v. Lewis* ([1985]) 170 Cal.App.3d 1079, 1089.) The stay of action discussed in Code of Civil Procedure section 583.240(b) governs only complete stays of an action, not partial stays or stays as to a single defendant. (See, e.g., *Bruns v. E-Commerce Exchange Inc.* (2011) 51 Cal.4th 717, 730 analyzing analogous section 583.340(b).) Unlike in *Highland Stucco & Lime Inc. v. Superior Court* (1990) 222 Cal.App.3d 637, 640, cited by Plaintiff, this Court never entered any order staying this entire case.

"Furthermore, Plaintiff's argument that service on J.B. Hunt Transport LLC was 'impossible, impractical, or futile due to causes beyond plaintiff's control', pursuant to section 583.240(d), lacks merit. That section expressly provides that 'failure to discover relevant facts or evidence' is NOT a cause beyond Plaintiff's control for the purpose of that section. The Court also observes that Plaintiff makes no showing of any attempt to discover the identity of the Doe defendants apart from seeking discovery or other information directly from Mervyn's (which was not required to provide any such discovery due to its bankruptcy stay.)."

Following notice of entry of the orders, Hills filed a timely appeal.

6

# DISCUSSION

## The Statutes, Their Application, and Some General Principles

Section 583.210, subdivision (a) provides in pertinent part that "The summons and complaint shall be served upon a defendant within three years after the action is commenced against the defendant." (§ 583.210, subd. (a).)

Section 583.250 provides:

"(a) If service is not made in an action within the time prescribed in this article:

"(1) The action shall not be further prosecuted and no further proceedings shall be held in the action.

"(2) The action shall be dismissed by the court on its own motion or on motion of any person interested in the action, whether named as a party or not, after notice to the parties.

"(b) The requirements of this article are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute."

Section 583.240 provides, however, that "[i]n computing the time within which service must be made pursuant to this article, there shall be excluded the time during which any of the following conditions existed," going on to list four conditions. Hills contends two of the four conditions were present here: that in subdivision (b), which excludes the time during which the "prosecution of the action or proceedings in the action was stayed and the stay affected service"; and that in subdivision (d), which excludes the time during which "service, for any other reason, was impossible, impracticable, or futile due to causes beyond the plaintiff's control."

The statutes are in chapter 1.5, entitled "Dismissal For Delay in Prosecution." More specifically, the statutes are in Article 2, entitled "Mandatory Time for Service of Summons." The statutes are *not* in article 3, entitled "Mandatory Time for Bringing Action to Trial or New Trial," which is significant for several reasons, the most fundamental of which is that the articles are to be applied differently, with the service of process rules applied strictly against the plaintiff, and the bringing to trial rules applied liberally in favor of the plaintiff. Specifically:

7

As quoted, section 583.210, subdivision (a) requires the plaintiff to serve the summons and complaint within three years of the filing of the complaint. And section 583.250, subdivision (a)(2) directs that where plaintiff has failed to do so, "the action shall be dismissed." Dismissal is mandatory. (*Watts v. Crawford* (1995) 10 Cal.4th 743, 748.) Our colleagues in Division Three explained the significance of this, and how the policy underlying the service statutes is different than the policy underlying the statutes pertaining to bringing a case to trial. It was in *Shipley v. Sugita* (1996) 50 Cal.App.4th 320, 326, as follows: "Section 583.210 is designed to give defendants timely notice of an action so they can make efforts to preserve evidence. By contrast, section 583.310 concerns the timeliness of bringing the action to trial. (*Damjanovic v. Ambrose* (1992) 3 Cal.App.4th 503, 510.) The sections are implemented differently based 'on the recognition that ordinarily a plaintiff exercising due diligence is in control of the time of service of summons, while a plaintiff is not ordinarily in control of bringing a case to trial.' (*Ibid.*) Consequently, the exceptions codified in section 583.240, subdivision (d) must be construed strictly against the plaintiff. (*Williams v. Los Angeles Unified School Dist.* (1994) 23 Cal.App.4th 84, 102; 17 Cal. Law Revision Com. Rep. [(1984) 905, 933].) Again, by contrast, the similar exception to section 583.310 contained in section 583.340, subdivision (c) is construed liberally, consistent with the policy favoring resolution on the merits. (17 Cal. Law Revision Com. Rep., *supra,* at p. 936.)"

As the Court of Appeal summed up in *Scarzella v. DeMers* (1993) 17 Cal.App.4th 1762, 1770–1771, the "legal principles governing the failure to timely bring a matter to trial do not control the failure to timely serve a summons," and the policy favoring a trial on the merits "does not compel denial of the motion for dismissal for delay in service."

Those are some general principles regarding the statutes. One other general principle applies to the setting here: the three year service requirement applies to defendants named in the complaint as Does. (See *Warren v. Atchinson, T & S.F. Ry. Co.* (1971) 19 Cal.App.3d 24, 38.) In other words, the three year rule applies where the defendant seeking dismissal was served as one of the Doe defendants named in the original complaint, later amended to show his true name. (*Lesko v. Superior Court*

*(Lopez)* (1982) 127 Cal.App.3d 476, 484–485.)  In short, a plaintiff has three years from the date of filing the complaint to identify and serve Doe defendants.  (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1118.)

### The Stay Against Mervyn's Did Not Affect Service on J.B. Hunt and Werner

Hills first contends that section 583.240, subdivision (b) applied here because there was an automatic bankruptcy stay against the only known defendant, which affected service to the unknown Doe defendants.  Hills asserted below that the stay against Mervyn's was a "stay of proceedings" to which section 583.240, subdivision (b) applied.  As noted, the trial court disagreed.  Citing *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 730 (*Bruns*), the trial court held that subdivision (b) only applies to "complete stays of an action, not partial stays or stays as to a single defendant."  Because the bankruptcy court never ordered a complete stay of proceedings as a result of Mervyn's bankruptcy, the court reasoned, subdivision (b) did not apply.

On appeal, Hills argues that the trial court erred in two respects when interpreting section 583.240, subdivision (b).  First, he contends the court incorrectly concluded that the statute applied only to complete stays.  Second, he contends that the court erred by failing to give effect to the second phrase in the statute, that "the stay affected service." We agree with Hills on the first point.[5]  But not the second.

---

[5] As indicated, the trial court noted, and correctly, that the California Supreme Court already resolved this issue in *Bruns*.  But the trial court misconstrued the holding. The defendants in *Bruns* moved to dismiss the complaint under section 583.340, subdivision (b) because the five-year period to bring the action to trial had elapsed, even though there was a partial stay in effect during that period.  (*Bruns, supra*, 51 Cal.4th at p. 723.)  Section 583.340, subdivision (b) is an exception to section 583.310, which tolls the required five year period while "[p]rosecution or trial of the action was stayed or enjoined."  (§ 583.340, subd. (b).)  At issue in *Bruns* was whether a stay of the "prosecution" of an action under section 583.340, subdivision (b) included partial stays or applied only to complete stays of action.  (*Bruns, supra*, 51 Cal.4th at p. 721.)

To resolve the issue, the court compared the language used in section 583.340, subdivision (b), with the language used in section 583.240, subdivision (b), what the court called the "different but related statute" at issue on this appeal.  (*Bruns, supra*, 51 Cal.4th at pp. 726-727.)  The difference between subdivisions (b) in sections 583.340 and

Hills argues that the partial stay against Mervyn's "affected service" to J.B. Hunt and Werner because he neither knew, nor had reason to believe, that J.B. Hunt and Werner were involved in the matter, since Mervyn's had "complete control of the information about other potential tortfeasors" and was not required to disclose that information. In other words, although the proceedings were not stayed against J.B. Hunt and Werner,[6] two unknown Doe defendants at the time the original complaint was filed, the proceedings against Mervyn's, the only known defendant, nonetheless affected service to them, and therefore the exception should apply. We disagree.

" 'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Bruns*, *supra*, 51 Cal.4th at p. 724.)

---

583.240 is that the former tolls time when the prosecution of the action was stayed or enjoined, while the latter tolls time when the prosecution or proceedings in the action was stayed and the stay affected service. (*Id*. at p. 727.) Emphasizing the significance of this distinction, the *Bruns* court reasoned that "[w]hen one provision in a bill refers to the stay of prosecution *or* proceedings in the action, and another provision refers only to a stay of the prosecution, the inference is compelling that the latter reference is only to a complete stay and does not encompass a limited stay." (*Ibid*.) Put otherwise, *Bruns* found that the term "proceedings" in section 583.240, subdivision (b) referred to partial stays, while the term "prosecution" in both statutes referred to a complete stay. (*Ibid*.)

[6] Hills concedes that "Mervyn's bankruptcy stay would not necessarily stay proceedings against non-bankrupt defendants." (See *In re Bell & Beckwith* (1984) 39 B.R. 914, 917-918 ['It is well established that the automatic stay does not enjoin actions against entities that have not filed a petition under the Bankruptcy Code.'].") Therefore, it is undisputed that the partial stay applied only to Mervyn's.

10

Hills claims that the language section 583.240, subdivision (b) pertaining to "affected service" is clear, and that we should follow what he claims is its plain meaning. According to Hills, "affect" is a "broad term, and its ordinary meaning is to 'make a difference to' (Oxford Online Dictionary) or 'influence, sway, modify of alter' (Webster's Encyclopedia Unabridged Dictionary)." Hills also contends that nothing in the statute suggests that the word should be circumscribed in any way, or that it has some other specialized meaning. In sum, Hills contends that "affect" should be given its plain—and in Hills's view, broad—meaning. And so applying his claimed plain meaning of the word "affect," Hills argues that the partial stay against Mervyn's "made a difference" to service of the unknown defendants. It supposedly "altered" his ability to pursue Mervyn's, to obtain information about other entities that might be liable for his injuries, and to then serve those entities.

Hills's argument ignores the fact that the stay does not even apply to the defendants at issue—and certainly could not have affected service on them.

Citing *Damjanovic v. Ambrose, supra,* 3 Cal.App.4th at p. 510 (*Damjanovic*), J.B. Hunt argues that the stay must "affect service" condition cannot apply, since there was no stay against J.B. Hunt and Werner, both of whom were available for service. *Damjanovic* dealt with Government Code section 945.3, a statute that "prevent[s] a criminal defendant from suing a peace officer, or his or her employer, for conduct of the peace officer relating to the criminal offense while charges were pending against the defendant." (*Damjanovic*, *supra*, 3 Cal.App.4th at pp. 507–508.) Damjanovic had been charged with resisting arrest. On March 9, 1987, during the pendency of his prosecution, he filed a complaint against the arresting officers and several civilian and Doe defendants. (*Id.* at p. 507.) On October 21, 1988, the criminal proceeding was dismissed. (*Id*. at p. 506). Despite this, Damjanovic did not serve the civilian defendants, and also did not substitute the true name for a Doe defendant, until more than three years after the date he filed his civil action. (*Id*. at p. 507.) The trial court dismissed the civilian and Doe defendants pursuant to section 583.210. (*Ibid*.)

11

On appeal, Damjanovic argued that Government Code section 945.3 prohibited him from instituting a civil action against the police officers during the pendency of his criminal proceedings and that, because the statute tolled the statute of limitations, its operation made service of summons to the defendants impractical and futile under section 583.240, the exception to section 583.210. (*Damjanovic*, *supra*, 3 Cal.App.4th at pp. 508-509.) The court disagreed, drawing attention to the policy distinction between statutes of limitations (to which Government Code section 945.3 pertains) and time limitations contained in section 583.210. (*Id*. at p. 509.) "The statute of limitations is concerned only with the timeliness of instituting an action, while [section 583.210] is concerned with the speedy prosecution of an action after such action has already been commenced. [Citation.]" (*Ibid*.) Importantly, the court also found that Government Code section 945.3 applied only to peace officers and not civilian defendants, which meant that the plaintiff was "required to serve the civilian defendants" despite the stay as to the peace officers, "so that [the civilian defendants could] take adequate steps to preserve evidence." (*Id*. at p. 510.)

J.B. Hunt argues that *Damjanovic* holds that a statute that stays a prosecution as to a specific class of defendants in an action does not operate to stay service of the summons and complaint on the other defendants in the action. Thus, and as applied here, the partial stay against Mervyn's did not operate to stay service on J.B. Hunt and Werner, and therefore section 583.240, subdivision (b) did not toll the three-year service period as to them. Put otherwise, the excuse in subdivision (b) can only be applied to the service on Mervyn's, not to the service on J.B. Hunt and Werner.

We recognize that while *Damjanovic* involved a Doe defendant, it did not address the issue of a how a stay against the only known defendant may affect service and summons on unknown defendants. But while *Damjanovic* may be distinguishable in that regard, we nonetheless find it instructive in assessing whether a partial stay against the known defendant may be considered to have "affected service" to other defendants, known or unknown, to which the stay does not apply. Based on *Damjanovic*'s reasoning, and the need to preserve evidence, we conclude it cannot.

Our conclusion is supported by the fact that section 583.240 provides three other conditions available to toll the time required for service, most significantly, section 583.240, subdivision (d), which tolls time when "[s]ervice, for any other reason, was impossible, impracticable, or futile due to causes beyond the plaintiff's control." (§ 583.240, subd. (d).) Subdivision (d) therefore operates as a catch-all to toll time "for any other reason," and could, if factually applicable, apply to a situation where a stay against the only known defendant might affect service to unknown defendants.

**The Trial Court Did Not Abuse Its Discretion In Concluding That Service Was Not Impossible, Impracticable, or Futile Due to Causes Beyond Hills's Control**

In computing the time within which service of summons must be made, section 583.240, subdivision (d) excludes time during which "[s]ervice, for any other reason, was impossible, impracticable, or futile due to causes beyond the plaintiff's control." The second sentence of the provision provides, however, that "[f]ailure to discover relevant facts or evidence is not a cause beyond the plaintiff's control for the purpose of this subdivision."

Hills contends that section 583.240, subdivision (d) applied, since the stay as to Mervyn's made it impossible, impracticable, or futile to serve the Doe defendants within the required three-year period. Thus, Hills argues, the period in which J.B. Hunt and Werner were unknown and unidentified should be tolled, and that the trial court erred in not doing so. Again, we disagree.

The trial court found that service to J.B. Hunt and Werner was not "impossible, impracticable, or futile" due to causes beyond Hills's control. The court arrived at this conclusion by first noting that the second sentence in subdivision (d) "expressly provides that 'failure to discover relevant facts or evidence' is NOT a cause beyond [Hills's] control for purposes of that section." The court then observed that Hills made "no showing of any attempt to discover the identity of the Doe defendants apart from seeking discovery or other information directly from Mervyn[']s (which was not required to provide any such discovery due to its bankruptcy stay.)[.]"

13

Hills contends that the trial court misinterpreted and misapplied section 583.240, subdivision (d), claiming the court ignored the first sentence and went straight to the second sentence, thereby violating important rules of statutory construction. According to Hills, by "[c]ompletely bypassing the threshold question—was service impossible due to causes beyond Hills'[s] control—the trial court then applied the second sentence too expansively, in a manner that eclipsed the first sentence." Without citing to any authority, Hills claims that when read correctly, subdivision (d) actually provides that "the facts required to effect service must be capable of discovery by some means within plaintiff's control and which can be discovered by reasonable diligence. When an attorney acts with diligence, and the delay is not due to his or her error or misconduct, then compliance with the three-year service requirement is excused." We are not persuaded.

We begin by reiterating that the excuse of impossibility, impracticability, or futility must be strictly construed against the plaintiff, in light of the need to give a defendant adequate notice of the action so that the defendant can take necessary steps to preserve evidence. (*Shipley v. Sugita, supra,* 50 Cal.App.4th at p. 326; *Williams v. Los Angeles Unified School Dist., supra,* 23 Cal.App.4th at p. 102.)

The Law Revision Commission comments to section 583.240 specifically state that subdivision (d) "makes clear that there is only an excuse for causes beyond the plaintiff's control and that failure to discover relevant facts or evidence does not excuse compliance." (17 Cal.L.Rev.Comm. Rep., *supra,* 905.) Importantly, failure to discover relevant facts includes the plaintiff's failure to discover the true identity of Doe defendants within the statutory time. (See *Lopa v. Superior Court* (1975) 46 Cal.App.3d 382, 387 [Doe defendants must ordinarily be indentified and served within three years from the commencement of the action]; see also *Republic Corp. v. Superior Court* (1984) 160 Cal.App.3d 1253, 1258.)

The Supreme Court had occasion to address the "impossible, impracticable, or futile" language in *Bruns, supra,* 51 Cal.4th 717, albeit in the more-liberal-to-the-plaintiff

14

context of a failure to bring the case to trial setting. Even so, the court held that plaintiff did not make the requisite showing:

"Under 583.340(c), the trial court must determine what is impossible, impracticable, or futile 'in light of all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.] The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.' [Citations.] . . . Determining whether the subdivision (c) exception applies requires a fact-sensitive inquiry and depends 'on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming those obstacles.' [Citation.] ' "[I]mpracticability and futility" involve a determination of " 'excessive and unreasonable difficulty or expense,' " in light of all the circumstances of the particular case.' [Citation.]

"The question of impossibility, impracticability, or futility is best resolved by the trial court, which 'is in the most advantageous position to evaluate these diverse factual matters in the first instance.' [Citation.] The plaintiff bears the burden of proving that the circumstances warrant application of the section 583.340(c) exception. [Citation.] ' " The 'reasonable diligence' standard is an appropriate guideline for evaluating whether it was impossible, impracticable, or futile for the plaintiff to comply with [the statutory five-year constraint] *due to causes beyond his or her control.*" ' [Citation.] The trial court has discretion to determine whether that exception applies, and its decision will be upheld unless the plaintiff has proved that the trial court abused its discretion." (*Bruns, supra,* 51 Cal.4th at pp. 730–731.)

In sum, the determination of whether service was impossible, impracticable, or futile due to causes beyond the plaintiff's control is a matter within the trial court's discretion, and will not be disturbed on appeal unless an abuse of discretion is shown. (See *De Santiago v. D and G Plumbing, Inc.* (2007) 155 Cal.App.4th 365, 371 [failure to bring case to trial].) "Where a trial court has discretionary power to decide an issue, we are not authorized to substitute our judgment for that of the trial court. [Citation.]

Reversible abuse exists only if there is no reasonable basis for the trial court's action, so that the trial court's decision exceeds the bounds of reason. [Citations.]" (*Sanchez v. City of Los Angeles* (2003) 109 Cal.App.4th 1262, 1271.) Hills hardly demonstrates such abuse here.

Hills argues that the time for service should be tolled under section 583.240, subdivision (d) because the trial court "acknowledged this impossible situation when it conceded that Mervyn's was not required to provide Hills with any information." Hills asserts that he demonstrated the utmost diligence in pursuing his claim and that, contrary to the trial court's suggestion he should have done something more to pursue the unidentified defendants, doing anything more would have been like "searching for a needle in a haystack." Furthering this argument, Hills claims that no one involved had any reason to suspect other tortfeasors existed; that even if he had reason to suspect other tortfeasors, there was nothing he could have done to identify them or require them to cooperate; and that he cannot be accused of any misconduct or error that would justify the dismissal for failure to serve J.B. Hunt and Werner sooner. We reject the arguments, for several reasons.

As a general rule, a bankruptcy stay against one defendant does not make it impossible to serve other nonbankrupt defendants. (See *In re Chugach Forest Products, Inc.* (9th Cir. 1994) 23 F.3d 241, 246.) Hills could have sought relief from the stay under section 362(d) of title 11 of the United States Code—which, not incidentally, he represented to the court he would do in five separate case management statements filed between December 2008 and May 2011. Merely requesting information and discovery about the incident through "several telephone calls" with Mervyn's counsel over the period of several years, without more, does not reasonably explain the delay here.

*A. Groppe & Sons Glass Co., Inc. v. Fireman's Fund Ins. Co.* (1991) 232 Cal.App.3d 220, 224, involving a bankruptcy proceeding, albeit in a different context, is illustrative. There, the plaintiff had filed a bankruptcy petition for reorganization, and a trustee had been appointed to oversee it. A defendant moved to dismiss for failure to timely serve the summons and complaint. Plaintiff, there, like Hills

16

here, contended that the bankruptcy proceeding made service "impossible, impracticable, or futile due to causes beyond the plaintiff's control." The trial court rejected the contention and dismissed the action. The Court of Appeal affirmed, holding "that plaintiff had not met its burden of showing adequate excuse for lack of diligence in prosecuting the action, since it could have sought an order from the bankruptcy court compelling the trustee to maintain the action." And the court summed up: "Because plaintiff had means available to it to force prosecution of the action (or, alternatively, to make a record showing it was impossible for it to do so), plaintiff failed to demonstrate that service was "impossible, impracticable or futile" under the circumstances of this case. We conclude that plaintiff did not meet its burden of showing the trial court abused its discretion in failing to find the excuse of impossibility, impracticability or futility applied to the facts of this case. Where, as here, plaintiff fails to establish abuse of discretion or that it exercised reasonable diligence throughout the entire period of time the case was pending, we need not reach the issue of whether the delay in service was prejudicial to defendant." (*Id.* at p. 227.) Likewise here.

Hills asserts that he exercised exceptional, not merely reasonable, diligence in conducting discovery to identify the unknown defendants. We read the record differently.

To begin with, while a plaintiff's diligence may be a factor for other reasons under section 583.240, subdivision (d), diligence in discovering relevant facts is no longer an excuse for belated service of summons. (See *Bishop v. Silva* (1991) 234 Cal.App.3d 1317, 1322; *Dale v. ITT Life Ins. Corp.* (1989) 207 Cal.App.3d 495, 501-502.) Indeed, section 583.240, subdivision (d) explicitly provides that "[f]ailure to discover relevant facts or evidence is not a cause beyond the plaintiff's control for the purpose of this subdivision."

But even assuming diligence is a factor, Hills does not demonstrate it. Reading the record as favorably as possible to Hills, after the complaint was filed in August 2008, the Dunnion firm attended the December 2008 case management conference. Then, according to the de Guzman declaration, in early 2009 she had a few discussions with

17

Mervyn's officers, which discussions apparently ended in March 2009,when she was told that Mervyn's would not stipulate to a relief from the bankruptcy stay and would not provide any discovery. The next contact with Mervyn's was not until May 17, 2011— over two years later.

The sum total of the claimed diligence was to file the complaint and then, when counsel learned of Mervyn's bankruptcy, to file case management statements over a period of almost 30 months representing counsel "anticipates filing for relief from stay to the Chapter 7 [*sic*] trustee of the Bankruptcy Court when that trustee has been appointed, in order to proceed with discovery and trial of case." There is no evidence that counsel ever filed any request with the bankruptcy court for any reason. Or even attempted any discovery at all, discovery that might well have been allowed, as illustrated by *In re Miller* (9th Cir. 2001) 262 B.R. 499.

There, plaintiff Groner sued defendant Miller, who then declared bankruptcy. Groner thereafter amended her complaint to add Miller's husband as a defendant, and then served a deposition subpoena on Miller, who was described as "the key witness to Groner's claims" against the husband. Groner's counsel advised Miller's bankruptcy counsel that he "was taking the deposition as a third party witness—not [as] a party—and hence the subpena [*sic*] instead of the normal party deposition procedure that would be utilized in state court." (*In re Miller, supra,* at p. 501, fn. omitted.) Miller resisted, and the bankruptcy court ultimately awarded sanctions against Groner's counsel for violating the automatic stay.

The Bankruptcy Appellate Panel reversed, holding that the automatic stay does not protect a debtor from testifying in connection with pending litigation as long as the discovery or testimony is not intended to assert a claim against the debtor or the property of the debtor's estate. Concluding that Groner's counsel had not violated the automatic stay by issuing the subpoena and seeking to compel compliance with it, the Bankruptcy Panel held as follows:

"Section 362 (a) prohibits the commencement or continuation of an action against the debtor; to the extent that [the plaintiff] was eliciting Debtor's testimony for purposes

18

other than to continue the prosecution of her claims against Debtor, the proposed discovery did not violate the automatic stay, unless the issuance of subpoenas itself constitutes 'issuance or employment of process' against Debtor or a 'judicial proceeding' against Debtor. If this were true, a debtor could never be called as a witness (even in actions where the debtor is not a party) without relief from the stay. Such an interpretation of section 362 (a) defies common sense and the spirit of the Code. Information is information, and we believe the discovery of it as part of the development of a case against non-debtor parties is permissible, even if that information could later be used against the party protected by the automatic stay." (*In re Miller, supra,* at p. 505.)

Moreover, according to Werner's brief, Hills did not even attempt to pursue the claim against Mervyn's bankruptcy. As Werner describes it, "As set forth in Werner's request for judicial notice, the bankruptcy court established **January 9, 2009**, as the general 'claims bar date' in the Mervyn's bankruptcy proceeding. Under the order establishing the general 'claims bar date,' all creditors with claims against Mervyn's listed in the schedules filed by Mervyn's as disputed, contingent or unliquidated, as Hills' claim was, were required to file a 'proof of claim' by that date or their claim would be barred. Hills did not file a 'proof of claim' in the Mervyn's bankruptcy. As such, his claim against Mervyn's was barred. There was no reason, therefore, for Hills' attorneys to let almost three years and eight months pass before dismissing Hills' complaint against Mervyn's on August 1, 2012, in exchange for obtaining information from Mervyn's bankruptcy attorneys. This could have and should have been done much earlier, at no cost to Hills, since his failure to file a 'proof of claim' in the Mervyn's bankruptcy proceeding had already resulted in his claim against Mervyn's being barred."[7]

Hills's reply brief does not take issue with this description.

As to Hill's assertion that there was no reason to suspect other tortfeasors, Hills was unloading trucks on Mervyn's property while employed by someone other than

---

[7] On November 14, 2013, Werner filed a request for judicial notice. The request was not opposed, and we granted it on December 12, 2013.

Mervyn's. What would be so unusual if the trucks were in fact operated by someone else as well.

In addition to his many assertions of diligence, Hills's position intimates that in essence there was nothing he could do about the predicament, his reply brief summing up his position this way: "Second, even if the stay were lifted, the Court must further speculate that Mervyn's would have cooperated in discovery. The more likely scenario is that Mervyn's bankruptcy attorneys, rather than hire California counsel to litigate a relatively small damages action, would have stipulated to some amount of damages, Hills would have become an unsecured creditor in the bankruptcy, then gone to the back of the line, with no hope of ever seeing a dime. In that event, Mervyn's would not have engaged in discovery that would eventually lead to respondents.

"Third, even in the completely unlikely event that the stay was lifted, and Mervyn's agreed to litigate and then participated in discovery that lead to respondents, it is not certain that all those events would have occurred in a timely fashion. Mervyn's was out of business. Discovery was sure to be unusually difficult. Finding the relevant records and former personnel with knowledge of the events would have taken even more time in an already lengthy process. . . . [Citation.] Against these odds, and having no reason to suspect other tortfeasors existed, the only viable option for Mr. Hills was to allow Mervyn's time to come out of its Chapter 11 bankruptcy, at which time the case would go back on the active calendar. . . ."

Not only is this nothing but speculation, we again note that the applicable statute requires strict construction, based on the policy that the service requirement is "to give defendants timely notice of an action so they can make efforts to preserve evidence." (*Shipley v. Sugita, supra,* 50 Cal.App.4th at p. 326; *Scarzella v. DeMers, supra,* 17 Cal.App.4th at pp. 1770–1771.) Here, the accident happened in August 2006. It is now August 2014, eight years later.

## DISPOSITION

The orders of dismissal are affirmed.

 

_____
Richman, J.

We concur:

_____
Kline, P.J.

_____
Brick, J.[*]

---

[*]Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.